Lorraine C. CULLEN; John L. Jund; and Michael Landi, on behalf of each, and on behalf of all persons similarly situated; namely, those employees of the County of Nassau; the Towns of Hempstead, North Hempstead and Oyster Bay; and the Village of Hempstead, who have been subjected to solicitations for campaign contributions to the Republican Party in an inherently coercive manner or who have been subjected to scrutiny by officials of the Republican Party in an inherently coercive manner or who have been subjected to scrutiny by officials of the Republican Party in connection with their hiring, employment or promotion; and Civil Service Merit Council of Long Island, Plaintiffs-Appellants-Cross-Appellees,

v.

Joseph P. MARGIOTTA, Jr., et al., Defendants,

The Nassau County Republican Committee; the Town of Hempstead Republican Committee; the County of Nassau; and the Town of Hempstead, Defendants-Appellees,

The Nassau County Republican Committee; the Town of Hempstead Republican Committee; and the Town of Hempstead, Defendants-Appellees-Cross-Appellants.

Nos. 1468–1472, Dockets 86–7066, 86–7068, 86–7070, 86–7076 and 86–7148.

United States Court of Appeals, Second Circuit.

Argued June 19, 1986.

Decided Feb. 2, 1987.

Burt Neuborne, New York City, for Class plaintiffs-appellants-cross-appellees.

Julian Kaplan, Mineola, N.Y. (Allen J. Rothman, Jessel Rothman, Jessel Rothman, P.C., Mineola, N.Y., on the brief), for plaintiff-appellant-cross-appellee John L. Jund.

C. Evans Tilles, New York City, for plaintiff-appellant-cross-appellee Michael Landi.

Edward J. Hart, Uniondale, N.Y. (John E. Ryan, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., on the brief), for defendants-appellees-cross-appellants Nassau County Republican Committee and Town of Hempstead Republican Committee.

James A. Pascarella, Garden City, N.Y. (Thomas A. Illmensee, Pascarella, Illmensee & Carra, Garden City, N.Y., Edward T. O'Brien, Co. Atty. of Nassau County, Mineola, N.Y., on the brief), for defendant-appellee County of Nassau.

Joseph Jaspan, Garden City, N.Y. (Ellen W. Maurer, Jaspan, Ginsberg, Ehrlich, Reich & Levin, Garden City, N.Y., on the brief), for defendant-appellee-cross-appellant Town of Hempstead.

Before MESKILL, KEARSE, and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiffs-appellants-cross-appellees appeal from a December 27, 1985 judgment, as amended ("1985 Judgment"), entered in the United States District Court for the Eastern District of New York pursuant to Fed.R.Civ.P. 54(b) after a jury trial on liability issues before Jacob Mishler, *Judge*, dismissing certain parts of their complaint, brought principally under 42 U.S.C. § 1983 (1982) and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982), charging defendants The Nassau County Republican Committee ("County Committee"), The Town of Hempstead Republican Committee ("Town Committee"), The County of Nassau ("County"), and The Town of Hempstead ("Town"), with having coercively exacted contributions to the defendant Committees from employees and prospective employees of the County and the Town. Plaintiffs having earlier stipulated to the dismissal of their complaint as to all defendants except those listed above and to the dismissal as to all defendants of certain other claims, the 1985 Judgment principally (1) dismissed all claims against the County for failure of proof at trial, (2) dismissed plaintiffs' RICO claims against the other three defendants for failure of proof at trial, and (3) summarily dismissed all claims of Landi as time-barred. Claims of the plaintiff class under § 1983 against the Town, the Town Committee, and the County Committee remain pending in the district court.

On appeal, plaintiffs contend principally that the district court (1) fashioned procedures for the remedial phase of their surviving § 1983 claims that imposed undue burdens of proof on the class members and failed to assure them anonymity in the presentation of their individual evidence, and (2) erred in (a) dismissing their RICO claims, (b) restricting the temporal scope of their claims on the ground that neither the pendency of earlier litigation nor duress by defendants tolled the applicable statute of limitations, (c) refusing to grant a new trial against the County, and (d) refusing to enter judgment in their favor notwithstanding the verdict ("n.o.v.") with respect to their claim of extortionate acts of a Town Commissioner from 1978 to 1984. The County Committee, the Town Committee, and the Town have cross-appealed, contending principally that (1) all of plaintiffs'

claims are barred by *res judicata*, (2) plaintiffs' claims under 42 U.S.C. § 1983 should have been dismissed after trial for failure of proof, and (3) the action is not properly maintainable as a class action. The Town also attacks the court's interim award of attorney's fees to the plaintiff class.

For the reasons below, we conclude that we lack jurisdiction to entertain defendants' cross-appeals and plaintiffs' challenges to the interlocutory orders entered with respect to the remedial stage of the proceedings below. As to the issues properly before us, we conclude (1) that the dismissal of the complaint against the County should be affirmed with respect to the period covered by the trial but that the County was not entitled to dismissal of plaintiffs' claims in their entirety because the court erred in ruling that the applicable statutes of limitations had not been tolled; (2) that Landi's individual claims were, for various reasons, properly dismissed as against the Town and the Town Committee, but not as against the County or the County Committee; and (3) that the court erred in dismissing the RICO claims on the basis of the answers to special interrogatories posed to the jury. We thus vacate the judgment in part and remand to the district court for further proceedings with respect to the claims that were improperly dismissed.

## I. BACKGROUND

### A. *The Nature of Plaintiffs' Claims*

Plaintiffs Lorraine Cullen, John L. Jund, and Michael Landi were employed by the Town or the County prior to December 1976. Suing on behalf of all persons similarly situated, they claim that for some years prior to the filing of their federal complaint, the defendants had engaged in a scheme of demanding, in violation of plaintiffs' rights under federal law, that employees or prospective employees of the Town and the County contribute annually one percent of their salaries to the Nassau County Republican Party in order to obtain promotion or employment. Plaintiffs sought declaratory and injunctive relief, as well as refunds of the sums collected from class members pursuant to the alleged scheme since 1971.

Prior to commencing the present action, Cullen and Jund, purporting to sue on behalf of others "similarly situated," had brought suit challenging this alleged conduct in state court in 1974, naming as defendants, *inter alios*, Joseph M. Margiotta, individually and as County Leader of the Nassau County Republican Committee, Ralph G. Caso, individually and as County Executive of the County of Nassau, and the County of Nassau. Neither the Town nor the Town Committee was named as a defendant, either directly or indirectly. The state suit was dismissed on the grounds that the complaint did not set forth a cause of action under state law and that class action treatment was inappropriate under N.Y.Civ.Prac. Law ("CPLR") § 1005 (repealed and replaced by CPLR § 901 effective Sept. 1, 1975 (McKinney 1976)). *Cullen v. Margiotta*, 81 Misc.2d 809, 367 N.Y.S.2d 638 (Sup.Ct. Nassau Co. 1975) ("State Court Judgement"), *aff'd mem.*, 59 A.D.2d 831, 399 N.Y.S.2d 160 (2d Dep't 1977).

On December 14, 1976, plaintiffs commenced the present action pursuant to 42 U.S.C. § 1983, contending principally that defendants' alleged conduct violated their rights under the First Amendment to the Constitution. Their present complaint also alleged that this conduct constituted a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. §§ 1961(1) and (5). Plaintiffs sought, *inter alia*, single damages on their § 1983 claims and, pursuant to 18 U.S.C. § 1964(c), treble damages on their civil RICO claims.

### B. *Pertinent Pretrial Rulings*

Defendants moved to dismiss the action on various grounds, including failure to state a claim upon which relief can be granted, res judicata or collateral estoppel on account of the State Court Judgment dismissing plaintiffs' earlier action, and the statute of limitations. In a series of orders issued over a span of more than eight

years, the district court dismissed so much of the complaint as sought relief directly under the Constitution and under state law, but ruled that the complaint stated claims under § 1983 upon which relief could be granted and it found that these claims were not precluded by the State Court Judgment. It initially dismissed plaintiffs' RICO claims for failure to allege a sufficient connection between the challenged conduct and interstate commerce, but it later reinstated these claims.

The court held that plaintiffs' claims under both RICO and § 1983 were governed by a three-year statute of limitations and that the running of the statute had not been tolled. Accordingly, it ruled that claims that accrued prior to December 14, 1973, were barred. Finding that Landi's individual claims had accrued prior to December 14, 1973, the court summarily dismissed those claims.

The court ordered that the trial be bifurcated between liability and remedy issues. In light of the statute-of-limitations rulings, the liability trial was to focus on defendants' conduct beginning January 1, 1973.

Prior to commencement of the trial on liability, the district court ordered that a final judgment ("1979 Judgment") be entered pursuant to Fed.R.Civ.P. 54(b) on the claims it had dismissed, and it certified other questions for immediate appeal pursuant to 28 U.S.C. § 1292(b). This Court, concluding that the dismissed claims were too closely related to the claims that remained pending, and observing that the district court had not given any reason for its view that judgment should be entered immediately, dismissed the appeal from the 1979 Judgment on the ground that the Rule 54(b) certification had been an abuse of discretion and that the 1979 Judgment was not properly a final judgment under 28 U.S.C. § 1291. *Cullen v. Margiotta*, 618 F.2d 226 (2d Cir.1980) (per curiam). In addition, we denied leave to appeal the orders certified pursuant to § 1292(b); and we dismissed still other attempted appeals as improper under either § 1291 or § 1292.

## C. *The Trial and the Special Verdict*

In the summer of 1985, a jury trial was held on the liability issues with respect to the § 1983 and RICO claims against the Town, the County, and the Town and County Committees. Plaintiffs consented to the dismissal of these claims against all other defendants and to the dismissal of their other claims against all defendants. Detailed interrogatories were submitted to the jury with respect to each category of claim tried; a total of 77 questions were posed.

With respect to the § 1983 claims, the jury found, *inter alia,* that from January 1, 1973, to January 1, 1976, there had been a "practice and procedure" in Nassau County for the coercive solicitation of contributions from public employees to the County Committee and/or the Town Committee of one percent of the employees' salary. It found that the Town, the Town Committee, and the County Committee had participated in this coercive solicitation of contributions, but that the County itself had not; and it found that the practice and procedure had been a custom and policy of the Town but not of the County. The court concluded that plaintiffs had established that the Town, the Town Committee, and the County Committee, but not the County, had violated plaintiffs' First Amendment rights to associate with the political parties of their choice.

Further with respect to the § 1983 claims, the jury found that the practice and procedure had not "continued to the relatively recent past,"—*i.e.,* as apparently interpreted by the court, past January 1, 1976. And although the jury found that from 1978 to 1984, Michael Limongelli, the Town's Commissioner of Public Safety, had induced employees of his department to purchase tickets to Republican Party fund raising events by threatening that their failure to contribute would result in a loss of overtime and other employment benefits, it concluded that Limongelli's practice was not a custom or policy of the Town and was not within the scope of Limongelli's authority.

As to the RICO claims, the jury found, *inter alia,* that the Town, the Town Committee, and the County Committee were entities that had knowingly and willfully engaged in a pattern of illegal activity and that those three defendants collectively were an enterprise that engaged in or whose activities affected interstate commerce; and it found 13 predicate acts by public officials acting within the scope of their employment in coercively soliciting political contributions. It found, however, that the County was not an entity that had knowingly and willfully engaged in a pattern of illegal activity; and it found no RICO enterprise of which the County was a member. As discussed in greater detail in part V.B. below, the court concluded that plaintiffs had failed to establish any elements of a civil RICO claim against the County and had failed to establish a necessary element of their RICO claims against the other defendants.

With respect to the plaintiffs' individual claims, the jury found, *inter alia,* that Jund's refusal to make a one percent contribution was the proximate cause of his failure to be promoted.

D. *The Posttrial Rulings, the 1985 Judgment, and the Rule 54(b) Certification*

Following the conclusion of the trial on the liability issues, the court denied motions by plaintiffs for a new trial of their claims against the County, for judgment n.o.v. against the Town on the basis of Limongelli's extortionate acts, and for judgment in their favor on the RICO claims on the basis that the jury's interrogatory answers compelled the conclusion that the Town, the Town Committee, and the County Committee each knowingly and willfully engaged in a pattern of illegal activity in participating in the affairs of the RICO enterprise of which each was a member. The court also denied motions by the County Committee, the Town Committee, and the Town for judgment of dismissal or for a new trial on the § 1983 issues, concluding that these defendants are liable to plaintiffs for damages on the § 1983 claims.

The court directed the entry of the 1985 Judgment as a partial final judgment reflecting its pretrial dismissals of certain claims and its interpretation of the jury's answers to the interrogatories as to the RICO claims and the liability of the County. Insofar as is pertinent to the present appeal, this 1985 Judgment (1) dismissed the complaint in its entirety against the County, (2) dismissed plaintiffs' civil RICO claims against the other three defendants, and (3) dismissed all of the individual claims of Landi. The court directed that the 1985 Judgment be entered immediately, stating as follows:

> The court finds that there is no just reason for delay. The issues of law that may be presented on the partial judgment are unrelated to the remaining claims. The additional proceedings which relate to the individual claims of the members of the class may take many months and possibly years to resolve. It would be unfair to the parties to require that they await review until the resolution of those unrelated claims. *See* Rule 54(b), Federal Rules of Civil Procedure.

Memorandum of Decision and Order dated December 20, 1985 ("Posttrial Decision"), at 27–28.

In the Posttrial Decision, the court also granted the request of class counsel for an interim award of attorney's fees, ordering the County and Town Committees and the Town to pay counsel a total sum of $100,-000. The court did not direct that this award be reflected in the 1985 Judgment.

Looking toward the remedy phase of the litigation, the court noted that it had originally defined the plaintiff class to include "those past and present employees whose claims accrued on or before June 27, 1977, the date of class certification." Posttrial Decision at 18. It concluded that the jury's finding that plaintiffs had failed to establish the continuance of the coercive solicitation after January 1, 1976, should be incorporated into the definition of the class, and it therefore redefined the class as "those public employees who made contributions

during the period January 1, 1973 to January 1, 1976 and seek recovery of the sums contributed, and those public employees who claim injury by reason of a refusal to make such payment demanded of them during the period." *Id.* This order apparently was modified orally at a conference on January 17, 1986, during which the district court indicated that the class consists of public employees whose claims accrued between December 14, 1973, and December 14, 1976.

In the Posttrial Decision the court established a procedural framework for proof of individual claims. It ruled that a prima facie case would be made out by proof that a person, during the pertinent period, was a public employee who either contributed to the Republican Party through fear of economic loss or suffered loss of promotion or other benefits because he refused to contribute in response to a threat of such loss. The burden would then shift to the defendants to rebut the prima facie case by showing that they had legitimate reasons for their actions. The ultimate burden of persuasion would remain on individual class members.

### E. *The Present Appeals*

Plaintiffs have appealed from various parts of the 1985 Judgment and the Posttrial Decision. They challenge so much of the 1985 Judgment as dismissed their classwide complaint against the County and dismissed their RICO claims against the other defendants. They challenge the Posttrial Decision's rulings with respect to the showing that each class member must make to recover damages on the § 1983 claims, contending that the jury's answers to interrogatories sufficiently establish plaintiffs' right to recover on a classwide basis and that the court should have established a mechanism for each class member to recover while preserving his anonymity. In addition, plaintiffs contend that the ruling that claims accruing prior to December 14, 1973, were time-barred was improper because the applicable statute of limitations was tolled by the pendency of their state court action or by defendants' duress.

They also contend that they are entitled to damages with respect to the period after January 1, 1976, because the jury found that coercive acts by Limongelli spanned the period 1978 to 1984 and because Limongelli's acts are attributable to the Town as a matter of law and to all defendants as acts of their racketeering enterprise.

Landi has appealed the 1985 Judgment, challenging the granting of summary judgment dismissing his individual claims on statute-of-limitations grounds. He argues that even if there was no tolling, summary judgment was precluded by the existence of genuine issues of fact as to when his claims accrued.

The County Committee, the Town Committee, and the Town have cross-appealed from so much of the Posttrial Decision as denied their motions to dismiss all or part of the complaint, denied their alternative motions for a new trial on the § 1983 claims, and granted interim attorney's fees. They also contend that the action is not properly maintainable as a class action.

For the reasons below, we dismiss defendants' cross-appeals for lack of appellate jurisdiction and we conclude that we are without jurisdiction to entertain plaintiffs' appeal insofar as it challenges the court's rulings with respect to their ongoing § 1983 claims. With respect to plaintiffs' challenges to the 1985 Judgment, we conclude that plaintiffs are not entitled to a new trial against the County with respect to the period covered in the liability trial but that the County was not entitled to a dismissal of the complaint in its entirety because the court erred in ruling that the statutes of limitations applicable to plaintiffs' claims were not tolled. Our ruling on tolling is, in part, applicable to Landi's individual claims against the County and the County Committee, and hence certain of Landi's claims were improperly dismissed. We also conclude that the court erred in dismissing the RICO claims on the basis of the answers given by the jury to the special interrogatories, because those answers left a gap that should have been filled by the

court. Accordingly, we affirm the 1985 Judgment in part, vacate it in part, and remand to the district court for further proceedings.

## II. APPELLATE JURISDICTION

Many of the issues raised by the parties on these appeals and cross-appeals need not detain us long, for we lack jurisdiction to consider them. Since none of the decisions here challenged are orders relating to injunctions, *see* 28 U.S.C. § 1292(a), or interlocutory orders as to which this Court has granted leave to appeal, *see* 28 U.S.C. § 1292(b), we have no jurisdiction to review them unless they are "final" orders within the meaning of 28 U.S.C. § 1291. Most of the challenged decisions, particularly those relating to plaintiffs' § 1983 claims against the Town, the Town Committee, and the County Committee, do not meet this requirement.

### A. *Defendants' Cross-Appeals*

█ Although the district court made many rulings both prior to and after the liability trial, its only final judgment was the 1985 Judgment. Defendants' cross-appeals do not challenge any of the decisions embodied in the 1985 Judgment, for that judgment only dismissed claims. The decisions challenged by defendants in the cross-appeals—refusing to dismiss plaintiffs' § 1983 claims except against the County, refusing to decertify the plaintiff class, and making an interim award of attorney's fees—are embodied only in the Posttrial Decision and other similarly interlocutory orders. The district court has never yet purported to determine with finality the extent of plaintiffs' rights to recover from the Town, the Town Committee, and the County Committee on the § 1983 claims. All of its interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain. *See, e.g.,* Fed.R.Civ.P. 54(b); *Leonhard v. United States,* 633 F.2d 599, 608 (2d Cir.1980) (interim order dismissing claims against defendant subject to revi-

sion), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Hastings v. Maine-Endwell Central School District,* 676 F.2d 893, 896 (2d Cir.1982) (interim award of attorney's fees subject to revision and not immediately appealable).

We thus lack jurisdiction to entertain the cross-appeals and they are dismissed.

### B. *Plaintiffs' Challenges to Orders Not Included in the 1985 Judgment*

Plaintiffs' challenges to district court orders that are not embodied in or subsumed within the 1985 Judgment are similarly flawed. Thus, we disagree, in part, with plaintiffs' contention that their appeal from the 1985 Judgment enables them to seek review of

> [t]he District Court's dismissal of the RICO claim; its denial of the new trial against Nassau County; its refusal to toll the statute of limitations; its refusal to permit recovery of the Limongelli funds; its refusal to grant refunds subsequent to 1976; its refusal to grant class-wide compensatory and punitive damages for the violation of First Amendment rights; and its refusal to establish an acceptable remedial mechanism....

(Principal Brief Submitted on Behalf of the Plaintiff-Class as Appellant and Cross-Appellee at 30.)

Insofar as these rulings constituted or were ingredients of the final dispositions incorporated in the 1985 Judgment, we may, for the reasons discussed in Part II.C. below, properly review them. Only the first three issues listed by plaintiffs, fall into this category, *i.e.,* (1) the dismissal of the RICO claims, (2) the denial of the new trial against the County, and (3) the court's refusal to toll the statute of limitations, the latter two issues being appropriate because they are subsumed in the 1985 Judgment's final dismissal of the complaint against the County.

█ The remaining issues, however, are related only to plaintiffs' § 1983 claims. Although plaintiffs assert here that defend-

ants are liable for Limongelli's extortionate acts under RICO, the jury interrogatories with regard to the Limongelli acts and the Town's responsibility for those acts were posed only as claims under § 1983. We have seen no indication in the record that plaintiffs objected to the failure to ask the jury whether these acts constituted RICO predicate acts, and hence we see no basis for reviewing the court's refusal to grant judgment n.o.v. as to these acts as part of our review of the dismissal of the claims under RICO. The other issues listed by plaintiffs focus squarely on the remedy proceedings on their surviving § 1983 claims against the Town, the Town Committee, and the County Committee. These claims have not been finally adjudicated; the court's rulings with respect to such matters as the nature of the proof required for the establishment of damages, the procedures to be followed for the proof of individual class members' claims, and the period for which damages may be recovered are interlocutory orders. These rulings were not included within the court's direction that a final judgment enter immediately pursuant to Rule 54(b), nor, in view of their interlocutory nature, would their inclusion have been proper. *See, e.g., Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (court has no power to enter judgment pursuant to Rule 54(b) with respect to orders that are not final adjudications); *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742–44, 96 S.Ct. 1202, 1205–06, 47 L.Ed.2d 435 (1976) (decision finding liability but not determining damages or other relief is not final and hence not appropriate for entry of judgment pursuant to Rule 54(b)).

█ Plaintiffs have argued that the district court's refusal to adopt remedy procedures that would ensure the plaintiff class members' anonymity should be regarded as a collateral order appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We are unpersuaded. To come within the "collateral order" doctrine, an order must at a minimum, (1) " 'resolve an important issue completely separate from the merits of the action'," (2) " 'conclusively determine the disputed question'," and (3) " 'be effectively unreviewable on appeal from a final judgment.' " *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (*quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)). The denial of anonymity does not meet any of these tests.

First, rulings as to what showings must be made in order for plaintiff class members to recover can hardly be thought to be "collateral"; these rulings, focusing on such matters as proximate causation between an individual refusal to contribute and absence of promotion, or between coercion and an individual contribution, go straight to the merits of plaintiffs' rights to refunds. Second, even if it dealt with a collateral matter, the order of the district court establishing procedures that require disclosure of the identities of class members who wish to recover damages is no more a conclusive resolution of the anonymity question than would be any other order requiring the disclosure of information. *See, e.g., Shattuck v. Hoegl*, 523 F.2d 509, 516 (2d Cir.1975) (order requiring witness's disclosures despite assertion of work product and attorney-client privileges not reviewable until entry of either a final judgment or an order holding witness in contempt). As we have stated in dismissing an appeal from an order denying a motion to quash a subpoena,

> while the *Cohen* doctrine holds that certain collateral orders may be deemed final, it does not transmute a preliminary collateral order into a conclusive collateral order. Even as to the collateral matters themselves a sense of finality is required, and federal appellate jurisdiction depends on the existence of a decision that leaves nothing for the court to do but execute the order.

*In re Grand Jury Subpoena*, 607 F.2d 566, 569 (2d Cir.1979). In the present case there has been no § 1983 claim decision, except that dismissing the County, on

which the district court could enter or execute a judgment. Instead, the order requiring disclosure leaves the plaintiffs free to choose whether or not to make the disclosures. Hence it is not a final order. *See, e.g., Sierra Club v. SCM Corp.*, 747 F.2d 99, 108 (2d Cir.1984) (order permitting plaintiff to proceed with its suit on condition that it disclose information about its members in order to test standing to sue "would not have been appealable").

Finally, a disclosure order is not effectively unreviewable on appeal. *See, e.g., Shattuck v. Hoegl*, 523 F.2d at 516; *Catena v. Capitol Industries, Inc.*, 543 F.2d 77, 78–79 (9th Cir.1976) (order requiring class members to provide certain information or be excluded from class does not meet *Cohen* test because it may be reviewed on appeal from final judgment). In the present case, if plaintiff class members decline to reveal their identities and are therefore denied damages, the order denying them anonymity will be reviewable on appeal from the final judgment.

We conclude that none of the district court's orders that are not either embodied in the 1985 Judgment or subsumed in some part of that Judgment are properly before us on these appeals and cross-appeals, and we turn finally to the question of whether the dismissals ordered in that judgment were properly certified by the court for immediate entry of a final judgment.

## C. *The Propriety of the Rule 54(b) Certification of the 1985 Judgment*

Fed.R.Civ.P. 54(b) provides in pertinent part as follows:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The Rule is designed to allow the district court to provide relief, where it is needed to avoid undue hardship to the parties, from the normal principle that a final judgment is not entered prior to the complete adjudication of all the claims of all the parties. *See generally Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 431–36, 76 S.Ct. at 897–900.

By the terms of the Rule, the court may direct entry of a partial final judgment either (1) disposing of claims of or against fewer than all of the parties to the case or (2) disposing of fewer than all of the claims. In either context, the matter of whether to direct the entry of a partial final judgment in advance of the final adjudication of all of the claims in the suit must be considered in light of the goal of judicial economy as served by the " 'historic federal policy against piecemeal appeals.' " *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980) (quoting *Sears Roebuck & Co. v. Mackey*, 351 U.S. at 438, 76 S.Ct. at 901). Respect for that goal requires that the court's power to enter a final judgment before the entire case is concluded, and thereby permit an aggrieved party to take an immediate appeal, be exercised sparingly. *See, e.g., Cullen v. Margiotta*, 618 F.2d at 228 (" 'The power which this Rule confers upon the trial judge should be used only "in the infrequent harsh case"....' " (quoting *Panichella v. Pennsylvania R.R.*, 252 F.2d 452, 455 (3d Cir.1958)). There are few guidelines as to when entry of the partial judgment should be ordered but several clearcut strictures as to when it should be eschewed.

In the multiple party situation where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants. *See, e.g., Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir.1976) (per curiam) (appeal dismissed where decision of issues presented would implicate rights of

other defendants who were not parties to the appeal). In such circumstances, where the resolution of the remaining claims could conceivably affect this Court's decision on the appealed claim, *see Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 943 (2d Cir.1968), the interlocutory order of dismissal should remain interlocutory and therefore subject to appropriate revision until the liabilities of all the defendants have been adjudicated, *see generally Leonhard v. United States*, 633 F.2d at 608.

■ In a case involving multiple claims, the court should not enter final judgment dismissing a given claim unless that claim is separable from the claims that survive. *See I.L.T.A. Inc. v. United Airlines, Inc.*, 739 F.2d 82, 84 (2d Cir.1984). Claims are normally regarded as separable if they involve at least some different questions of fact and law and could be separately enforced, *see United States v. Kocher*, 468 F.2d 503, 509 (2d Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973), or if "different sorts of relief" are sought and, consequently, the claim for greater relief would be pressed by the plaintiff even if the other claim were granted, *see Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 580–81 & n. 18, 100 S.Ct. 800, 805–06 & n. 18, 63 L.Ed.2d 36 (1980) (claimant would pursue requested ban on all vessels even after ban of one); *see also* 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2657, at 67 (2d ed. 1983) (claims are separable when there is more than one possible recovery and the recoveries are not mutually exclusive). When these features are present, claims may be considered separable even if they have arisen out of the same transaction or occurrence. *See Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 436–37 & n. 9, 76 S.Ct. at 900–01 & n. 9.

■ If the court concludes that the above criteria with respect to separability and disparity of claims are met, it may direct that the partial final judgment be entered, but only, in the terms of Rule 54(b), if it determines that "there is no just reason for delay." Such a determination is committed to the sound discretion of the district court and may be set aside only for abuse of discretion, *see Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. at 8–10, 100 S.Ct. at 1464–66 (to justify reversal, district court's determination must be "clearly unreasonable"); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 437, 76 S.Ct. at 900; *Cold Metal Process Co. v. United Co.*, 351 U.S. at 452, 76 S.Ct. at 908, but the certification should not be granted routinely, *see Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. at 8, 100 S.Ct. at 1464 ("Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."). Rather it should be "granted only if there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal,'" *Cullen v. Margiotta*, 618 F.2d at 228 (*quoting Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978)). Such a danger may be presented where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with the other claims. *See, e.g., Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 70 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977).

■ Since the appellate court may review the Rule 54(b) certification for abuse of discretion, it does not suffice for the district court to announce its determination that "there is no just cause for delay" in conclusory form. Rather, its certification must be accompanied by a reasoned, even if brief, explanation of its conclusion. *Cullen v. Margiotta*, 618 F.2d at 228. In reviewing the explanation, if the question of whether certification should have been granted is a close one, we will normally accept it if that course "will make possible a more expeditious and just result for all parties." *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir.1974).

The present case, of course, involves both multiple claims and multiple parties, and insofar as is pertinent to the present appeals, the district court dismissed all the claims of one of the plaintiffs (Landi), all the claims against one of the defendants (the County), and one of the remaining claims (RICO) but not the other (§ 1983). The direction for the immediate entry of the 1985 Judgment as a final judgment was accompanied by the court's statement of its view that since the issues of law presented by the 1985 Judgment were unrelated to the surviving § 1983 claims, and the remedy phase of the latter claims could last years, there was no just reason to require the parties to await the conclusion of that remedy phase in order to seek review of the claims already dismissed. We conclude that the Rule 54(b) certification with respect to the 1985 Judgment was within the proper bounds of the court's discretion.

### 1. The Dismissal of the Complaint Against the County

■ We see no abuse of the court's discretion in directing that final judgment enter immediately with respect to plaintiffs' claims against the County. The jury's answers to the interrogatories had consistently found that, in the period covered by the liability trial, the County had not participated in the alleged wrongdoing. Claims as to earlier periods had been summarily rejected by the court. The court had considered plaintiffs' request for a new trial on the basis of alleged errors in evidentiary and discovery rulings and had rejected that request. Thus, there was no longer a serious possibility that plaintiffs could recover against the County.

Nor was there any likelihood that the district court litigation of plaintiffs' surviving claims would in any way make moot an appellate ruling on the issues relating to the dismissal of the case against the County, for the liability issues common to all defendants had been disposed of, either by the district court in its rulings or by the jury in its answers to interrogatories. The issues that remain to be litigated, *i.e.*, the remedies to which the plaintiffs are enti-

tled, have no bearing on the liability issues decided in favor of the County.

Finally, we find not inappropriate the district court's view that, in light of the possible length of the remedy stage of the case, it would be unjust to require the plaintiffs to wait until that phase is concluded to obtain appellate review of the dismissal of the County, for vacation of that dismissal could require plaintiffs to go through a duplicative lengthy remedy phase if the County were eventually found liable to plaintiffs.

### 2. The Claims of Landi

■ Landi's claims were dismissed on statute-of-limitations grounds some three years ago on the basis of facts peculiar to him. While we likely would have viewed a Rule 54(b) certification at that time as improvident, we see no abuse of the court's discretion in including the dismissal of his claims in the 1985 Judgment since the liability phase of the litigation as to all claims had, under the district court's rulings, come to an end and the surviving issues are unrelated to those involved in Landi's appeal.

### 3. The RICO Claims

■ Lastly, we conclude that plaintiffs' RICO claims are sufficiently distinct from their § 1983 claims that the entry of an early final judgment dismissing the RICO claims was not precluded. While the two sets of claims arise from the same underlying facts, both their elements and the potential recoveries differ. Thus, to establish § 1983 liability a plaintiff must show that he has been deprived of a federal constitutional or statutory right by a person acting under color of law. To establish a right to recover under RICO, a plaintiff need not show that his constitutional or statutory rights were violated or that the defendant was acting under color of law. Rather the civil RICO plaintiff must show that the defendants were responsible for the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activi-

ty." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Proof of a pattern of racketeering activity, in turn, requires the plaintiff to establish at least two predicate crimes within a certain time period, *id.,* 105 S.Ct. at 3285 n. 14; 18 U.S.C. § 1961(5); and the enterprise or its activities must have some nexus with interstate commerce, *see* 18 U.S.C. § 1962. None of these RICO elements is required for proof of a § 1983 claim. In addition, the separability of the two types of claims is plain from the fact that civil RICO requires that a successful plaintiff be awarded treble damages, whereas a successful § 1983 plaintiff is entitled only to single damages, although in some circumstances punitive damages may be awarded in an amount that lies within the factfinder's discretion.

▇▇▇ We also conclude that the district court's dismissal of the RICO claims met Rule 54(b)'s requirement of finality. The dismissal was entered on the basis of the court's interpretation of the jury's answers to interrogatories, and the court had denied plaintiffs' motion for a new trial. The adjudication of these claims was undoubtedly as final as it was ever likely to be, absent appellate modification. The remedy proceedings to be conducted in the district court with respect to the § 1983 claims had no apparent potential for affecting either the district court's dismissal of the RICO claims or this Court's review of that dismissal.

On the other hand, the vacation of the RICO dismissals could have important ramifications for those remedial proceedings. If, for example, plaintiffs were eventually to prevail on their RICO claims, the liability of the defendants for damages on those claims would have to be determined. On the surface, it might seem that this would not cause a duplication of effort in damage calculation insofar as plaintiffs allege that they were induced to part with determinable sums of money as a result of defendants' acts, and damages assessed on the § 1983 claims might simply be trebled in order to calculate the amount of damages recoverable under civil RICO, *see* 18 U.S.C. § 1964(c) (awarding treble damages to "[a]ny person injured in his business or property" by reason of the RICO violation). However, awards for § 1983 violations might well reflect not just monetary loss but compensation for violation of constitutional rights. *See Memphis Community School District v. Stachura,* —— U.S. ——, 106 S.Ct. 2537, 2546–47, 91 L.Ed.2d 249 (1986) (Marshall, *J.,* concurring). Thus, if the RICO claims are viable, judicial economy will be served by having them reinstated immediately rather than after a prolonged remedy-determining process that might then have to be repeated.

We conclude that the district court's inclusion of the RICO claims in the 1985 Judgment certified pursuant to Rule 54(b) was not unreasonable.

### 4. *Issues Reviewable in Connection with Decisions Properly Appealed*

In sum, we conclude that the decisions properly appealed here are the 1985 Judgment's dismissal of the complaint against the County, its dismissal of all of the claims of Landi, and its dismissal of the RICO claims in their entirety. Our review of these decisions may properly encompass a number of the court's pretrial rulings— such as those regarding the statute of limitations—that are reflected in the 1985 Judgment only *sub silentio,* for "[a]n appeal taken from a judgment entered under [Rule] 54(b) brings to the court of appeals all issues determined in the district court which would be *reviewable* on an appeal from any final judgment." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 443 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

Finally, though we lack jurisdiction to review the court's interlocutory orders insofar as they pertain to plaintiffs' § 1983 claims against defendants other than the County, our rulings on the propriety of the dismissal of the plaintiff class's § 1983 claims against the County and of Landi's claims against all defendants will none-

theless have some applicability to the § 1983 claims still pending against those three defendants. Those interlocutory orders remain subject to modification by the district court. *See United States v. Lo-Russo,* 695 F.2d 45, 53 (2d Cir.1982) (" 'whether the case *sub judice* be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so' ") (quoting *United States v. Jerry,* 487 F.2d 600, 605 (3d Cir.1973)), *cert. denied,* 460 U.S. 1970, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983).

We turn, therefore, to the merits of the dismissals challenged on this appeal.

### III. THE DISMISSAL OF THE CLAIMS AGAINST THE COUNTY

The district court entered judgment dismissing the complaint against the County on the basis that the jury had found, with respect to the period January 1, 1973, to December 31, 1975, that the County had no custom or policy endorsing the coercive solicitation of contributions to the defendant Committees and that the County had neither been part of a RICO enterprise nor knowingly and willfully engaged in a pattern of illegal activity. Plaintiffs challenge the judgment dismissing the County on several grounds. They contend that they are entitled to a new trial because the district court erred in excluding certain evidence and in denying them discovery with respect to certain grand jury testimony and summaries of interviews conducted by agents of the Federal Bureau of Investigation ("FBI"). They also contend that the trial should not have been restricted to the 1973–1975 period, principally because the running of the three-year statute of limitations, concededly applicable to the § 1983 claims and by hypothesis applicable to the RICO claims, had been tolled. We find merit only in plaintiffs' tolling arguments, and we conclude that plaintiffs are entitled to try their claims against the County with respect to conduct dating from December 31, 1972, back at least to December 2, 1971.

### A. *The Discovery Orders*

In 1975, a federal grand jury conducted a wide-ranging investigation into the financing practices of the Nassau County Republican Party and certain of its affiliates, part of which focused on whether employees of the County and the Town were pressured to contribute one percent of their salaries to the Republican Party in order to keep their jobs and obtain promotions. Some 1000–1200 employees were interviewed by FBI agents, who assured them that the information they supplied would be kept strictly confidential. Documents were produced by defendants and others pursuant to grand jury subpoenas. And 300–400 employees testified before the grand jury, prior to which they were given assurances by government officials that their testimony would not be disclosed unless they testified publicly at trial or consented to the disclosure.

In the present action, plaintiffs sought an order requiring the government to disclose to them the interview reports prepared by the FBI agents, the documents subpoenaed by the grand jury, and the testimony of the so-called "one-percent" witnesses. Plaintiffs offered to keep confidential the identities of the witnesses and the interviewees.

The court ordered disclosure of the documents, of the grand jury testimony of witnesses who had testified in state criminal proceedings against two persons, and of the grand jury testimony of witnesses resulting in the indictment of a third person where the witnesses had consented to such disclosure. It refused to order production of the FBI interview reports or the testimony of any of the other grand jury witnesses. The ground for each refusal was that (1) the witnesses had made their statements "with the clear understanding that their identity not be disclosed" (Letter from Court to Class Counsel dated April 26, 1985, at 1), and (2) that disclosure might jeopardize their jobs (Transcript of Pretrial

Conference, May 9, 1985, at 10–13). We find no merit in plaintiffs' contentions that these two denials of discovery warrant a new trial of their claims against the County.

### 1. *Grand Jury Testimony*

In general, of course, the government is required to keep matters occurring in grand jury proceedings secret. *See* Fed.R. Crim.P. 6(e)(2). Disclosure otherwise prohibited by Rule 6(e)(2) may, however, be made when so ordered by a court in a judicial proceeding, *see* Fed.R.Crim.P. 6(e)(3)(C)(i), and within the following framework, the court has "substantial discretion" in dealing with Rule 6(e) applications. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222–23, 99 S.Ct. 1667, 1674–75, 60 L.Ed.2d 156 (1979) (*"Douglas Oil"*); *see In re Federal Grand Jury Proceedings*, 760 F.2d 436, 439 (2d Cir.1985).

■■■ A private party requesting disclosure of grand jury material pursuant to Rule 6(e)(3)(C)(i) has the burden of demonstrating particularized need, *i.e.*, that (a) the material sought is needed to avoid a possible injustice, (b) the need for disclosure is greater than the need for secrecy, and (c) the request is structured to cover only material so needed. *Douglas Oil*, 441 U.S. at 222–23, 99 S.Ct. at 1674–75. The burden is not easily met. Requests for wholesale disclosures should generally be denied, especially in a civil case. *See, e.g., United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *Baker v. United States Steel Corp.*, 492 F.2d 1074, 1079 (2d Cir.1974) (no authority for releasing grand jury transcripts "to permit *general discovery* in a civil case") (emphasis in original). And the assertion that Rule 6(e) disclosure will save a civil litigant time and expense is insufficient to show the requisite need where the evidence can be obtained through ordinary discovery or other routine avenues of investigation. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 431, 103 S.Ct. 3133, 3141, 77 L.Ed.2d 743 (1983); *United States v. Sobotka*, 623 F.2d 764,

768 & n. 5 (2d Cir.1980); *Baker v. United States Steel Corp.*, 492 F.2d at 1079. Factors that militate strongly against disclosure include an ongoing employment relationship between the grand jury witness and the target of the investigation, for the potential for retaliation against employee witnesses heightens the need for secrecy, *see Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674, even after the grand jury proceedings have concluded, *id.*; *see also United States v. Sobotka*, 623 F.2d at 767; *In re Grand Jury Investigation*, 665 F.2d 24, 33 (2d Cir.1981), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983).

■■■ The district court's refusal in the present case to order more than very limited disclosure of the grand jury testimony was not an abuse of discretion. Plaintiffs' requests were broad-scale and unparticularized. The production of defendants' subpoenaed records provided access to information through which plaintiffs could have identified employees of the County and the Town and conducted their own interviews. The fact that access to the grand jury testimony would have saved plaintiffs a good deal of time and expense is not a sufficient reason to breach grand jury secrecy, especially since, as noted by the district court, those who testified were vulnerable to reprisals from the defendants and had obtained assurances from the government that their identities would be kept confidential.

### 2. *The FBI Interview Reports*

■■■ We likewise find no abuse of discretion in the district court's refusal to order the disclosure of the FBI interview reports. In order to further "the public interest in effective law enforcement" by protecting the flow of information to law enforcement agencies, the Supreme Court has recognized a qualified privilege for statements of informers to law enforcement agencies. *Rovario v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). To overcome the privilege, the party seeking disclosure has the burden of establishing that the information sought is

both relevant and essential to the presentation of his case on the merits, *see United States v. Russotti*, 746 F.2d 945, 949–50 (2d Cir.1984), and that the need for disclosure outweighs the need for secrecy, *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983); *United States v. Manley*, 632 F.2d 978, 985 (2d Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *In re United States*, 565 F.2d 19, 22–23 (2d Cir.1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). "[W]holesale disclosure" and "fishing expedition[s]" will normally be inappropriate. *Id.* at 23–24. As is true with respect to requests for disclosure of grand jury materials, the availability of other means for discovery or investigation, such as depositions or interviews, even if more expensive, weighs against disclosure, *see Black v. Sheraton Corp. of America*, 564 F.2d 550, 555 (D.C.Cir.1977); *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 307 (5th Cir.1972), as does the possibility of economic retaliation against the informant, particularly where he is an employee of the target of the investigation, *see In re United States*, 565 F.2d at 22; *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d at 307; *Secretary of Labor v. Superior Care, Inc.*, 107 F.R.D. 395, 397 (E.D.N.Y.1985), or has been assured by a law enforcement official that his identity will not be disclosed, *see Michelson v. Daly*, 590 F.Supp. 261, 265 (N.D. N.Y.1984), *appeal dismissed on procedural grounds sub nom. Estis v. Daly*, 755 F.2d 913 (2d Cir.1985).

■ Here too, the district court has considerable discretion in determining whether disclosure is appropriate, *United States v. Lilla*, 699 F.2d at 105; *United States v. Manley*, 632 F.2d at 985; *United States v. Hyatt*, 565 F.2d 229, 231 (2d Cir. 1977), and in a civil case, the court's denial of discovery based on the informer's privilege will be overturned only if it is an abuse of discretion and has resulted in substantial prejudice, *see Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 354 (6th Cir.1984); *cf. In re United States*, 565

F.2d at 22 ("strength of the privilege is greater in civil litigation than in criminal").

■ In the present case, in light of the extreme breadth of plaintiffs' request, the availability of alternative means of obtaining the information, the potential for retaliation against the interviewees, and the assurances of confidentiality given by the FBI to obtain the interviews, we find no abuse of discretion in the court's denial of plaintiffs' request.

## B. *Exclusion from Evidence of the Margiotta Conviction*

Prior to trial, plaintiffs sought a ruling that they would be allowed to introduce into evidence at trial the fact that Joseph M. Margiotta, Jr., Chairman of the County Committee and then a defendant in the case, had been convicted of a felony by reason of his requiring insurance agents doing business with the County to pay a portion of their commissions to the Republican Party in order to be allowed to continue doing such business. *See United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). The court excluded the evidence on the ground that it might be used by the jury against defendants other than the County without a showing of connection to them and because the jury might confuse the fear of the insurance brokers in *Margiotta* with the alleged fear of the employees in the present action. Plaintiffs challenge this ruling, arguing that the *Margiotta* conviction was evidence of prior acts tending to establish that it was a custom or policy of the County to condition employment benefits on payments to the Republican Party. We find no basis for reversal.

■ Even where evidence of similar acts is relevant under Fed.R.Evid. 404(b), the trial court is required by Fed.R.Evid. 403 to weigh the probative value of the evidence against the potential for, *inter alia*, undue prejudice and jury confusion. The court is accorded broad discretion to exclude relevant evidence if the probative value is substantially outweighed by the

likelihood of jury confusion, and its decision will be reversed on appeal only upon a clear showing that it abused its discretion or acted arbitrarily. *See United States v. Smith,* 727 F.2d 214, 220 (2d Cir.1984); *United States v. Jamil,* 707 F.2d 638, 642 (2d Cir.1983).

■■■ We find no abuse of discretion here. The court heard arguments from both sides and plainly made the balancing analysis required by Rule 403. Its conclusion that the likelihood of confusion to the jury substantially outweighed the probative value of the evidence was not arbitrary and we will not overturn it.

### C. The Statute of Limitations Rulings

In addition to their challenges to the court's discovery and evidentiary rulings, plaintiffs contend that the court erred in restricting the liability trial to conduct of the defendants after January 1, 1973. The restriction was imposed on the ground that the statutes of limitations for claims under § 1983 and RICO were three years, and that there had been no tolling of the running of these periods. Since the present action was commenced on December 14, 1976, the court ruled that claims accruing prior to December 14, 1973, were time-barred. Plaintiffs do not dispute that a three-year statute governs the § 1983 claims, but they contend that its running had been tolled by both the pendency of their state court putative class action and the fact that plaintiffs were under duress from the defendants, delaying the commencement of litigation. In addition, plaintiffs contend that the proper statute of limitations for civil RICO claims is six years, or alternatively, that if a three-year statute applied to the RICO claims its running too was tolled. We reject plaintiffs' contention that a six-year statute governs civil RICO claims, but we find merit in their contention that, with respect to both the RICO and the § 1983 claims, the running of the three-year statutes was tolled.

### 1. The Statute of Limitations Applicable to Civil RICO

■■■ RICO does not contain its own statute of limitations for civil actions and

hence the court must apply the most appropriate limitations period provided by state law. *See Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Durante Brothers & Sons v. Flushing National Bank,* 755 F.2d 239 (2d Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). In *Durante,* whose civil RICO claims were based principally on the defendants' alleged collection of unlawful debts, we concluded that the most appropriate limitations period was New York's three-year period for suits to enforce a liability created by statute, *see* CPLR § 214(2). We reached this conclusion notwithstanding some similarity between a claim for the collection of an unlawful debt and a claim for state-law usury, to which the one-year limitations period provided by CPLR § 215(6) would apply, principally because the components of the two claims are fundamentally disparate ("a state law claim governed by § 215(6) could be established without proof of nine of the ten listed elements of the civil RICO claim"), 755 F.2d at 249, and because the aims of Congress in enacting RICO far exceeded the elimination of simple usury (*i.e.,* " 'the eradication of organized crime in the United States ... by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime' "), *id.* at 248 (quoting Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) (Statement of Purpose), *reprinted in* 1970 U.S.Code Cong. & Ad.News ("USCCAN") 1073).

We consider the *Durante*-type analysis equally applicable to civil RICO claims based on racketeering activity, notwithstanding plaintiffs' suggestion that *Durante*'s selection of the limitations period governing actions to enforce a liability created by statute has been overruled by the Supreme Court's subsequent decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct.

1938, 85 L.Ed.2d 254 (1985). In *Wilson,* the Court rejected the view that the state limitations period applicable to actions to enforce a liability created by statute governs claims under § 1983. Observing that § 1983 merely added to the remedies available to enforce existing rights and did not purport to create substantive rights, that it had been enacted principally to provide remedies for personal injuries "plainly sound[ing] in tort," that state statutory claims challenging conduct covered by § 1983 were scarce when § 1983 was enacted, and that even today few § 1983 claims are based on violations of statutory rights, the *Wilson* Court concluded that for statute-of-limitations purposes the § 1983 action should be likened to an action to redress personal injury, not to an action to enforce a liability created by statute. 471 U.S. at 276–79, 105 S.Ct. at 1947–49.

We find this reasoning inapplicable to claims under civil RICO. As we observed in *Durante,* Congress intended in RICO to establish new prohibitions, enhanced sanctions, and new remedies; its goal was to attempt to eradicate organized crime, rather than simply to provide an avenue of redress for wrongs cognizable at common law. Thus, most of the racketeering activity that could form the predicate for a civil RICO claim is defined in terms of specific federal statutory violations; additional elements of a civil RICO claim, such as effect on interstate commerce, commission of two predicate acts within a span of ten years, and the required existence of a RICO "enterprise," also find no counterparts at common law. Further, civil RICO remedies are designed not simply to compensate injured persons but to deter would-be wrongdoers by awarding treble damages and attorneys' fees to every successful plaintiff. Finally, unlike § 1983, which was enacted in the 1870's, RICO was enacted in 1970 when catchall limitations periods for statutory causes of action had long been commonplace. *See Malley-Duff & Associates v. Crown Life Ins. Co.,* 792 F.2d 341, 347–49 (3d Cir.), *cert. granted,* — U.S. —, 107 S.Ct. 569, 93 L.Ed.2d 573 (1986).

In light of the significant differences between civil RICO and other types of claims cognizable at common law or under state law, we have found no New York statute of limitations provision more appropriate for civil RICO actions than that governing actions to enforce a liability created by statute. Plaintiffs have argued for the application of CPLR § 213(1) or § 213(6), each providing a six-year period. We find neither appropriate. Section 213(1) "has generally been understood to govern only actions for equitable relief." *Pauk v. Board of Trustees,* 654 F.2d 856, 863 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). Civil RICO makes no provision for equitable relief. Section 213(6) is no more apt, for it governs actions for gross misconduct and constructive fraud, claims that could be established without proof of any criminal conduct (*compare* S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) (racketeering activity is an "act subject to criminal sanction"); *see* 18 U.S.C. § 1961(1)), or indeed without proof of any other elements of civil RICO. In short, we conclude that CPLR §§ 213(1) and (6) " 'fall[] far short of capturing the multitude of factual bases on which RICO can be based.' " *Malley-Duff & Associates v. Crown Life Ins. Co.,* 792 F.2d at 351 (*quoting Electronic Relays (India) Pvt., Ltd. v. Pascente,* 610 F.Supp. 648, 651 (N.D.Ill.1985)).

We conclude that the district court was correct in applying to plaintiffs' RICO claims the three-year period provided by CPLR § 214(2) for actions to enforce a liability created by statute.

### 2. *Tolling as to the § 1983 and RICO Claims*

Plaintiffs do not challenge the district court's ruling that a three-year limitations period is applicable to their § 1983 claims, but they contend that the running of that period was tolled by the pendency of their state court action and by duress by the defendants deterring the earlier pursuit of their claims. They contend also that, if the RICO claims are governed by CPLR

§ 214(2)'s three-year limitations period, that period was likewise tolled. The district court ruled that there was no significant tolling of the statute. We agree with plaintiffs' contentions, for when a federal court looks to state law to determine the most appropriate statute of limitations, it must also, so long as federal policy is not thereby offended, apply the state's rules as to the tolling of the statute. *Chardon v. Fumero Soto*, 462 U.S. 650, 655–62, 103 S.Ct. 2611, 2615–19, 77 L.Ed.2d 74 (1983). New York law follows two tolling rules that are pertinent to this case.

a. *The Filing of a Prior Class Action*

In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed. 2d 713 (1974) (*"American Pipe"*), in the context of a private action to enforce the federal antitrust laws, the Supreme Court approved the intervention of third parties on whose claims the statute of limitations would otherwise have run, on the ground that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. at 766. The Court reasoned that tolling was necessary to further the purposes of Fed.R.Civ.P. 23's provision for class actions, and that no injustice was done to the defendant, since the timely commencement of the class action against it provides adequate notice of the claims against it within the statutory period:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," ... are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

*Id.* at 554–55, 94 S.Ct. at 766–67.

The *American Pipe* tolling principle applies also when the class action has been dismissed and those who would have been class members commence an independent suit. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350–51, 103 S.Ct. 2392, 2395–96, 76 L.Ed.2d 628 (1983) (*"Crown, Cork"*). The reason is that absent putative class members are expected and encouraged to remain passive during the early stages of the class action and to "rely on the named plaintiffs to press their claims." *Id.* at 352–53, 103 S.Ct. at 2396–97; *see also American Pipe*, 414 U.S. at 552, 94 S.Ct. at 765. Not until a class is certified "does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it...." *Id.* An absent putative class member in an action where a class was never certified thus is not legally bound either by the named plaintiffs' choice of legal claims or by a dismissal for failure to allege sufficient facts to state a cause of action, even if that dismissal would have res judicata effect against the named plaintiffs. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314–15 (4th Cir.1978); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1355–56 (4th Cir.1976); 7B C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1789, at 243 (2d ed. 1986).

Notwithstanding the district court's belief that "New York law does not provide for a toll of the statute of limitations during the pendency of a similar or related action," Memorandum of Decision and Order dated February 21, 1984, at 4, the New York courts have, in the interest of avoiding "court congestion, wasted paperwork and expense," long embraced the principles of *American Pipe*. *See Yollin v. Holland America Cruises, Inc.*, 97 A.D.2d 720, 720, 468 N.Y.S.2d 873, 875 (1st Dep't 1983) (*"Yollin"*) ("We ... hold that the timely commencement of the action by plaintiff herein satisfied the purpose of the contractual limitation period as to all persons who might subsequently participate in the same suit as members of the class. See *American Pipe* ....' "); *Clifton Knolls Sewerage Disposal Co. v. Aulenbach*, 88 A.D.2d

1024, 1025, 451 N.Y.S.2d 907, 908 (3d Dep't 1982) ("the Statute of Limitations on each of plaintiff's claims was tolled during the pendency of [a prior] class action") (citing *Sutton Carpet Cleaners v. Fireman's Ins. Co.*, 68 N.Y.S.2d 218, 224 (Sup.Ct. Bronx Co. 1947), *aff'd*, 273 A.D. 944, 78 N.Y.S.2d 565 (1st Dep't 1948), *aff'd*, 299 N.Y. 646, 87 N.E.2d 53 (1949)). In *Sutton Carpet Cleaners*, 68 N.Y.S.2d at 224, the court was faced with 79 individual actions, at least some of which apparently had not been timely filed, and one purported class action filed days before the running of the limitations period. The court noted that "[t]he law undoubtedly is that a representative action timely brought saves all represented claims from the running of the statutory or contractual period of limitations," and ruled that tolling had occurred in the case before it even though the putative class plaintiff was not a proper representative of the class. *See also* 2 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 901.06, at 9–21 (1986) (filing of class actions tolls statute of limitations as to all members of class "even if the class action is ultimately dismissed for reasons other than the fact that it was a frivolous action") (citing *American Pipe*).

Notwithstanding the differences between the legal theories advanced by plaintiffs in the state court action and those advanced in the present action, we are persuaded that the *American Pipe* doctrine has applicability to the present action. The functional purpose of a statute of limitations is to prevent "stale" lawsuits, *i.e.*, suits after "evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe*, 414 U.S. at 554, 94 S.Ct. at 766. In *American Pipe* and *Crown, Cork*, 462 U.S. at 353, 103 S.Ct. at 2397, the Supreme Court held that tolling based on the filing of a prior class action is consistent with these purposes. Consequently, *American Pipe* tolling is properly extended to claims of absent class members that involve the same evidence, memories, and witnesses as were involved in the initial putative class action. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393–94 n.

14, 97 S.Ct. 2464, 2469–70, n. 14, 53 L.Ed.2d 423 (1977); *Crown, Cork*, 462 U.S. at 355, 103 S.Ct. at 2398 (Powell, J., concurring, joined by Rehnquist and O'Connor, *JJ.*); *American Pipe*, 414 U.S. at 562, 94 S.Ct. at 770 (Blackmun, J., concurring); *Escott v. Barchris Construction Corp.*, 340 F.2d 731, 734 (2d Cir.) (tolling applies when through initial class action "defendants were thus made aware of the nature of the evidence that would be needed at trial"), *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965).

■ We conclude that the *American Pipe* doctrine, though not applicable to all of the defendants in the present case, see Parts IV.B.1 and V.A. below, is applicable to claims against the County. The state court action filed by Cullen and Jund, asserting that they, as County employees, had been coerced to contribute funds to the Nassau County Republican Party, purported to be brought on behalf of themselves and all others similarly situated. The factual basis of that action was the same as that asserted here, *i.e.*, that contributions were coerced from County employees and noncontributors were punished. The defendants in the putative state class action were thus on notice to preserve evidence concerning their alleged coercion of contributions from that group of persons and their alleged reprisals against those who refused to contribute. Since the alleged wrongful acts are the same, the relevant evidence, memories, and witnesses with regard to these facts are the same for both actions.

Obviously there are differences between the state-law causes of action that were asserted in the putative state class action and the federal causes of action asserted here that are pertinent for some purposes: for example, the civil RICO elements that have a bearing on what state statute of limitations is most analogous, *see* Part III. C.1, *supra*. But these elements are entirely peripheral. The differences that distinguish a civil RICO cause of action from state-law causes of action for purposes of determining *which* statute of limitations to

apply are not the sorts of elements that suggest that *American Pipe* tolling would be inconsistent with the functional goal of statutes of limitations. For example, no special preservation of witnesses or evidence would ordinarily be necessary as to the factors of effect on interstate commerce, degree of exposure to liability (single damages vs. treble damages plus attorneys' fees), the timing of the predicate acts (whether they occurred within a 10–year period), or the existence of a RICO enterprise. The degree of exposure is a matter of law; the dates of the predicate acts will be apparent from the proof of the occurrence of those acts; the questions of whether there was a RICO enterprise and whether any person's activities affected interstate commerce would ordinarily be questions of inference to be drawn from the proof of the background facts surrounding the challenged conduct. The challenged conduct is what is common to both the RICO and the state-law claims, and that is what the defendant must be alerted to in order to preserve its evidence, record its recollections, and keep track of its witnesses. The state court complaint clearly challenged the conduct that is at issue here, and we would be hard pressed to conclude that that complaint was not sufficient to alert the defendants sued there to preserve the evidence regarding that conduct.

Unlike Judge Meskill in his dissenting opinion, *post*, we do not regard the fact that the state court action was premised on different legal theories as a reason not to apply *American Pipe* tolling to save the claims of class members who were not named plaintiffs in the state court action. It is not a flaw under that doctrine that the first action did not alert the defendant to have its lawyers research the applicability of a particular statute or rule of common law. Indeed, limiting *American Pipe* tolling to the identical "causes of action" asserted in the initial class action would encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification, thereby producing the

very results the New York courts seek to prevent by such tolling, *i.e.*, "court congestion, wasted paperwork and expense." *Yollin*, 97 A.D.2d at 720, 468 N.Y.S.2d at 875; *see also American Pipe*, 414 U.S. at 553–54, 94 S.Ct. at 766–67; *Crown, Cork*, 462 U.S. at 350–51, 103 S.Ct. at 2395–96.

In sum, because the asserted factual basis of the state court claims was the same as that of the claims asserted here and the County was made a defendant to that action, the running of the statute on the claims of the absent plaintiff class members against the County was thereby tolled. We note that the named plaintiffs in the state action, Cullen and Jund, assert here claims that accrued in 1974 and are therefore timely without regard to *American Pipe* tolling.

The time during which the running of the statute was tolled, on the *American Pipe* theory, was the period of the pendency of the state court action. That action was commenced on December 2, 1974. The complaint was dismissed by the trial court in February 1975, *Cullen v. Margiotta*, 81 Misc.2d 809, 367 N.Y.S.2d 638 (Sup.Ct.Nassau Co. 1975), and after that court's denials in 1975 and 1976 of motions for leave to replead and reargue, the dismissal was finally affirmed by the Appellate Division in October 1977. *Cullen v. Margiotta*, 59 A.D.2d 831, 399 N.Y.S.2d 160 (2d Dep't 1977). Hence, insofar as the *American Pipe* doctrine is concerned, the running of the statute of limitations was tolled from December 2, 1974, until October 1977, *i.e.*, well past the December 14, 1976 commencement of the present action. Thus, the district court's ruling that all claims accruing prior to December 14, 1973, are time-barred was erroneous. Instead, plaintiffs are entitled to pursue here claims against the County that accrued as early as three years prior to the date of the commencement of the state court action, *i.e.*, claims that accrued on or after December 2, 1971.

Further, as we next discuss, the running of the statute may, by virtue of a different

theory, have been tolled for an even longer period.

### b. Causes of Action of Which Duress is an Element

■ The second New York doctrine that may be applicable to toll the running of the statute holds that "when duress is part of the cause of action alleged," the statute of limitations is tolled until the duress has ended "because the offensive conduct is regarded as a continuous wrong." *Baratta v. Kozlowski*, 94 A.D.2d 454, 458–59, 464 N.Y.S.2d 803, 806 (2d Dep't 1983) (citing *Kamenitsky v. Corcoran*, 97 Misc. 384, 388, 161 N.Y.S. 756, 759 (Sup.Ct.App. Term 1916), *rev'd on other grounds*, 177 A.D. 605, 164 N.Y.S. 297 (1st Dep't 1917)); *accord Pacchiana v. Pacchiana*, 94 A.D.2d 721, 462 N.Y.S.2d 256, 257 (2d Dep't 1983) (citing *Kamenitsky v. Corcoran*); McLaughlin, Supplementary Practice Commentaries C 201:6, at 25 (McKinney Supp. 1987). In *Kamenitsky v. Corcoran*, the plaintiff alleged that the defendant had repeatedly extorted money from him by threatening to cause the revocation of his license to do business unless payments were made. The court held that the statute of limitations on plaintiff's claim to recover the payments was tolled until "the time when the [plaintiff's] compulsion through fear ceased." 97 Misc. at 388, 161 N.Y.S. at 959. Thus, the duration of the tolling under the duress theory is the period during which the duress continued. *Id.; Baratta v. Kozlowski*, 94 A.D.2d at 458–59, 404 N.Y.S.2d at 806.

■ *Kamenitsky* stands only for the proposition that duress tolls the running of a statute of limitations if duress against the plaintiff is an element of the cause of action asserted. If a plaintiff was under some duress from the defendant not to sue but duress is not part of the gravamen of his claim, New York courts do not toll the statute of limitations. *Piper v. Hoard*, 107 N.Y. 67, 70–72, 13 N.E. 626 (1887) (duress does not toll statute on claim for fraud); *Baratta v. Kozlowski*, 94 A.D.2d at 459–60, 404 N.Y.S.2d at 806–07 (threat to kill does not toll statute on claim for conversion of property); *Stadtman v. Cambere*, 73 A.D.2d 501, 422 N.Y.S.2d 102, 103 (1st Dep't 1979) (threat to have plaintiff fired does not toll statute on claim for conversion of property).

■ The tolling-by-duress principle has evident potential application to the present action. Plaintiffs' principal complaint is that, as part of defendants' annual fundraising campaign, employees of the Town and the County were coerced to make payments of one percent of their salaries in order to gain promotions or other employment benefits. The contention is that these forced payments both (1) constituted extortion within the meaning of the Hobbs Act, 18 U.S.C. § 1951 (1982), *see, e.g., United States v. Margiotta*, 688 F.2d at 134; *United States v. Brecht*, 540 F.2d 45, 51 (2d Cir.1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977); *United States v. Daley*, 564 F.2d 645, 648 (2d Cir.1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), thereby providing the predicate racketeering activity needed to sustain a civil RICO claim, and (2) deprived them of their First Amendment rights to associate with the political parties of their choice, which is the gravamen of their claims under § 1983. Plaintiffs seek refunds of their coerced contributions. As duress is clearly an element of these claims, the court erred in ruling that all claims accruing earlier than December 14, 1973, were automatically barred.

We note also that, although the actual applicability of the tolling-by-duress principle to any given class member depends on a factual finding of duress on him within three years of the commencement of suit, as a general matter the existence of duress was, to a substantial degree, supported at the liability trial. The jury found that the Town, the Town Committee, and the County Committee had engaged in a practice and procedure of "the coercive solicitation of contributions," and that "a substantial number of [Town employees] generally underst[oo]d that they were expected to contribute about one percent of their annual

salaries to the Republican Party" and "fear[ed] that if they failed or refused to [do so] they would lose opportunities for promotion, overtime and other requests for favorable consideration." (Interrogatories 1(a), (b), (d), and (e).) The jury found that these three defendants were aware, or should reasonably have foreseen, that they were exploiting the employees' fears (interrogatory 3), and found that in all of the 11 specific instances queried in the interrogatories, employees had made payments that were induced by such fear (interrogatories 7 and 8). A factfinder could also reasonably infer that a person who made a payment under duress in order to gain or preserve employment benefits was unlikely to feel free to bring suit immediately thereafter. Thus, although a cause of action for refund may have accrued at a certain time, the duress factor may well have prevented the statute from running for some time thereafter, perhaps until the next demand was made, or until a demand was made but rejected. For example, an employee who made a contribution under duress in early 1973 may have been under duress until the next demand for an annual contribution was made in early 1974; if this were found, the statute would have been tolled until early 1974, and the pursuit of his claim for refund in the present action would be timely notwithstanding its accrual prior to December 14, 1973. In other words, a claim that accrued prior to December 14, 1973, was timely asserted in the present case if the duress that induced the payments continued at least until December 14, 1973. As another example, the jury found that five persons had been coerced to make payments in 1974; if those persons also made payments under duress from defendants prior to December 14, 1973, the jury could infer that that duress was continuous, and the claim for recovery of those earlier payments would not be time-barred.

Though the timeliness of the claims described in some of these illustrations may have become irrelevant as to the County on account of its exoneration by the jury with respect to its activities during the period covered by the trial of the liability issues, the principle is discussed here because, as set forth in the preceding section, the *American Pipe* doctrine makes timely all claims of plaintiff class members against the County that accrued on or after December 2, 1971. The combined effect of *American Pipe* and the tolling-by-duress principle is to make timely those claims against the County of which duress is an element even if they accrued prior to December 2, 1971, if the duress continued at least to that date.

■ We stress, however, that the duress theory is not available to toll all of the claims of all of the class members. First, some of those persons contend that although contributions were coercively solicited, they refused to contribute. Their claims for lost job opportunities, while still cognizable under civil RICO and § 1983, do not involve capitulation to duress but rather are claims for retaliation on account of their rejection of improper demands. We do not believe that New York law extends the tolling-by-duress principle this far. Further, since the tolling lasts only so long as the duress lasts, there may be class members to whom the principle does not apply because they made no payments under duress within three years of the commencement of suit on these claims. For example, the jury found that several employees made induced payments in the period 1968 to 1970. If these employees made no further payments under duress, the tolling may well have ended not later than 1970. Since the state court action was not begun until 1974, the claims of these employees would, by hypothesis, already have been barred by the three-year statute of limitations.

As to the claims to which the tolling-by-duress principle is applicable, there seems, in theory, to be no limit as to how old a claim might be timely. We note, however, that plaintiffs' amended complaint requests refunds of sums coercively collected "since 1971." As a practical matter, therefore, assuming there has been no amendment to this pleading, we regard claims that ac-

crued prior to January 1, 1971, as not being at issue.

In sum, we conclude that New York's tolling-by-duress principle has some application to the present action and may well permit the pursuit of many claims that the district court ruled were time-barred. The fact-specific nature of the duress contention means that on this appeal we can give the district court only the above general guidance. We leave it to the court on remand to determine, either summarily where there are no genuine questions of material fact on these duress issues or after a trial at which these questions are put to the jury, which plaintiffs, if any, are entitled to the benefit of the New York rule that where duress is part of the cause of action, it tolls the statute of limitations for as long as the duress continues.

### D. Summary as to the Claims Against the County

To summarize, we find no error in the district court's discovery and evidentiary rulings on plaintiffs' claims against the County. Since plaintiffs failed to establish any liability on the part of the County with respect to conduct during the period January 1, 1973, to December 31, 1975, the judgment dismissing the complaint against the county is affirmed to that extent.

The period covered by the liability trial of the claims against the County was, however, improperly shortened by reason of the district court's failure to apply the proper statute-of-limitations tolling rules. Plaintiffs are entitled to a trial with respect to the County's liability for claims under either § 1983 or RICO accruing at least as early as December 2, 1971, i.e., three years prior to the filing of their state court putative class action. The district court or the jury may conclude that this period should be extended to an even earlier time on the basis of the tolling-by-duress principles discussed above.

Finally, we note that although, for the jurisdictional reasons stated in Parts II.A. and B. above, we have dealt here only with plaintiffs' claims against the County, it

may well be that our rulings on the tolling of the § 1983 claims against the County, as well as our rulings with respect to Landi's claims against the other defendants (see Part IV.B.1. below), would have equal applicability to the § 1983 claims still pending against the other three defendants. As stated in Part II.C.4. above, the district court has the power to reconsider its extant interlocutory rulings.

### IV. THE DISMISSAL OF THE CLAIMS OF LANDI

The amended complaint alleged that Landi had been Assistant Superintendent of the County's Highway Administration and had been recommended for promotion in 1971; that he had been informed that he would not receive his promotion unless he contributed one percent of his salary to the Nassau County Republican Party; that he did not make the contribution and did not receive his promotion. Plaintiffs alleged that Landi was again solicited for a contribution at some subsequent time, and that after again refusing to contribute, he was dismissed from his job.

Defendants moved for summary judgment dismissing Landi's claims on the ground that he had been terminated because he had failed to pass a required Civil Service examination; that his failure occurred in February 1973 and he was notified of the required termination by October 15, 1973; and that his claims therefore accrued more than three years prior to the December 14, 1976 commencement of the present action. Landi submitted an affidavit in opposition to summary judgment, asserting that his claims did not accrue until December 31, 1973, the date of his actual termination, because he had hopes until the end that he would remain in the employ of the County.

The district court granted summary judgment dismissing Landi's claims as time-barred on the ground that they had accrued in October 1973 because at that time Landi knew or had reason to know that his employment would be terminated because of his failure to pass the Civil

Service examination. Landi challenges this ruling on appeal, contending that genuine issues of fact existed as to the date of the accrual of his claims.

Guided principally by our above dispositions with respect to the proper disposition of plaintiffs' claims against the County, we conclude that the dismissal of Landi's claims must be vacated in part.

### A. The Accrual of Landi's Claim for Loss of Employment

Federal law governs the question of when a federal claim accrues, even if a state statute of limitations is to be applied. *E.g., Leonhard v. United States*, 633 F.2d at 613. Under federal principles, a claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis of the action. *Pauk v. Board of Trustees*, 654 F.2d at 859.

The district court found that there was no genuine question of fact as to the date of accrual of Landi's claims because Landi knew or should have known in October 1973 that his employment would be terminated because of his failure to pass the Civil Service examination. While this ruling appears to have missed the thrust of Landi's affidavit submitted in opposition to summary judgment, we conclude that the affidavit failed to show that there was a genuine issue as to whether or not Landi should have known by October 1973 that he had a claim based on the alleged coercive practices.

Landi's affidavit, in order to demonstrate that loss of employment on account of a failure to pass the Civil Service exam was not automatic, asserted in part as follows:

> It was a well-known fact that the Civil Service systm [*sic*] in Nassau County was perverted to the ends of the Republican party under the leadership of Margiotta to coerce and pressure governmental employees. The mere fact that a person failed or passed an exam had no bearing whatsoever on whether he would be fired or get the job. All job appointments were approved by Margiotta. If one

flunked he would, if he paid the one (1%) percent, be transferred to another job.

(Affidavit of Michael Landi dated December 1, 1983, at 1.) Although the affidavit tends to negate the inference that Landi would automatically have been dismissed on account of his test failure, it does not make the claim based on his loss of employment any more timely, for the affidavit made no semblance of a suggestion that Landi believed *he* would avoid termination by making the requested payment. Rather, it suggested that Landi himself had no intention of paying the demanded one percent, stating that he was asked for the contribution and refused to make it. Landi's acknowledgment that defendants' coercive and pressure tactics were "well-known" and that one who failed the exam could remain in the County's employ *"if he paid the one (1%) percent"* (emphasis added) revealed that he had reason to know in October 1973, in light of his lack of any intent to make that payment, that he would be dismissed.

Accordingly, the district court's conclusion that Landi's claim based on his 1973 loss of job accrued in October 1973 was correct.

### B. The Effects of the Tolling Principles and the Jury's Interrogatory Answers

While the fact that Landi's claim for loss of employment accrued in October 1973 made it appear, within the legal framework adopted by the district court, that Landi's claims were barred by the statute of limitations, that framework was inappropriate, for, as we have concluded in Part III.C.2. above, the court failed to apply pertinent principles as to tolling. Our ruling that the pendency of the state court putative class action tolled the statute for some claims that accrued as early as December 2, 1971, is, to a degree, available to save Landi's claims.

Preliminarily, it must be noted that the allegations of the amended complaint may reasonably be read as asserting two claims

on behalf of Landi: first, that he failed to receive a merited promotion because of his failure to make a demanded contribution, and second, that his employment was terminated because of his failure to meet a subsequent demand for a contribution. These claims fare slightly differently.

### 1. *The Promotion Claim*

The promotion claim is supported by the assertion in Landi's affidavit that he became eligible for a promotion on August 8, 1972, and the affidavit implies, if it does not state outright, that a contribution was demanded in order that the promotion come to fruition. This claim must have accrued between August 8, 1972, the date of eligibility, and October 15, 1973, the date on which Landi knew or should have known that his employment would be terminated. The district court did not discuss this claim, and its failure to do so was of course consistent with its view that no tolling principles were available to save any claim that accrued prior to December 14, 1973.

As we have discussed above, claims of plaintiff class members against the County were tolled by the pendency of the state court putative class action in accordance with the *American Pipe* doctrine, making timely any such claim that accrued on or after December 2, 1971. This ruling is applicable to save Landi's promotion claim against the County.

Tolling under this theory is available against any person who was a defendant in the earlier class action, *see American Pipe*, 414 U.S. at 554–55, 94 S.Ct. at 766–67; but we have held it inapplicable to persons who were not defendants, since commencement of a suit against others is insufficient to give a nondefendant notice of the assertion of claims against him. *See Arneil v. Ramsey*, 550 F.2d 774, 782 n. 10 (2d Cir.1977). Although we have discovered no New York decision on this aspect of *American Pipe* tolling, we infer, by analogy to similar circumstances, that the state courts too would decline to hold that such tolling had occurred against any person not made a defendant in the prior class action. *Cf. Duffy v. Horton Memorial Hospital*, 66 N.Y.2d 473, 477, 497 N.Y.S.2d 890, 893, 488 N.E.2d 820, 822 (1985) (amended complaint that adds new party against whom the statute of limitations has run does not relate back to filing of original complaint).

■■■■■ Given this restriction, plaintiffs' state court putative class action did not toll the running of the statute of limitations on claims against the Town or the Town Committee, for neither was named, directly or indirectly, as a defendant in the state court action. We conclude that the running of the statute was tolled, however, on Landi's claims against the County Committee, since the state court action was brought against, *inter alios*, Margiotta as "County Leader Nassau County Republican Committee." Under New York law, an unincorporated association, including a county political committee, can be sued only in the name of its president or treasurer, *see* N.Y. Gen. Ass'ns Law § 13 (McKinney Supp.1987); *96 Fifth Avenue Realty Corp. v. Greenberg*, 180 Misc. 614, 617, 44 N.Y.S.2d 231, 233–34 (Mun.Ct.1943), *aff'd*, 181 Misc. 142, 47 N.Y. S.2d 222 (Sup.Ct.App.Term 1944), and a suit against a person as president or treasurer treats him as a "representative" of such association, *Martin v. Curran*, 303 N.Y. 276, 281, 101 N.E.2d 683 (1951). The County Committee concedes that Margiotta, whose title was "Chairman" was in effect its "president or treasurer," within the meaning of N.Y. Gen. Ass'ns Law § 13, Reply Brief of Defendants County Committee *et al.*, at 3 n. 1, and that the County Committee was in effect a defendant in the New York state court action. Thus, the state court action tolled the running of the statute of limitations with respect to Landi's promotion claim against the County Committee.

### 2. *The Loss-of-Employment Claim*

■■■■ Application of the *American Pipe* principle also saves Landi's claim against the County Committee for loss of employment, for that claim accrued after December 2, 1971. While the principle also makes that claim timely as asserted against the

County, it is ineffective to save the claim from dismissal. This is because at the trial of the liability issues, the jury found that the County had not participated in the alleged wrongdoing during the period January 1, 1973, to December 31, 1975, and we have affirmed the dismissal of the claims against the County with respect to this period. Since Landi's affidavit makes it clear that the challenged conduct with respect to the termination of his employment occurred in 1973, he is now collaterally estopped from pursuing his termination claim against the County.

### 3. Tolling-by-Duress

 Finally, although we have discussed in Part III.C.2.b. above the possible applicability of the principle that the statute of limitations is tolled during a defendant's duress where duress is a part of the cause of action, we cannot see that Landi is one of the class members who could avail himself of this principle. As both the complaint and Landi's affidavit make clear, Landi steadfastly refused to make any contribution. He therefore plainly resisted any attempted duress and can hardly claim to have been coerced to forgo bringing suit.

### C. Summary as to Landi's Claims

In sum, we affirm so much of the 1985 Judgment with regard to Landi as dismissed his claim against the County with respect to his loss of employment in 1973 and as dismissed both of his claims against the Town and the Town Committee. We vacate so much of the 1985 Judgment as dismissed his pre–1973 claim against the County for denial of promotion and as dismissed both his promotion and loss-of-employment claims against the County Committee.

## V. THE DISMISSAL OF THE RICO CLAIMS AS AGAINST THE TOWN, THE TOWN COMMITTEE, AND THE COUNTY COMMITTEE

In addition to dismissing the complaint in its entirety as against the County after trial on the liability issues, the district court dismissed the RICO claims asserted against the Town, the Town Committee, and the County Committee on the ground that the jury's answers to the interrogatories revealed that plaintiffs had failed to establish an essential element of their RICO claims against these three defendants. Plaintiffs contend that as a result of the court's failure to rule that the statute of limitations on these claims had been tolled the time period at issue during the liability trial was improperly restricted, and they contend that the court should not have dismissed the RICO claims with respect to the time period that was the focus of trial. We agree.

### A. The Tolling of the RICO Statute of Limitations

As discussed in Parts III.C. and IV.B. above, although the district court correctly ruled that a three-year statute of limitations governs plaintiffs' claims under civil RICO, it erred in failing to rule that the running of that statute had been tolled either by reason of the pendency of the state court action or by reason of duress, or both. We conclude that both tolling grounds have applicability to the RICO claims, though not equally with respect to all defendants.

Within the framework we have discussed in Part III.C.2. above, the tolling-by-duress doctrine is available with respect to plaintiffs' RICO claims against all of the defendants. Insofar as the Town and the Town Committee are concerned, since American Pipe tolling is not applicable to them (see Part IV.B.1. above), plaintiffs are entitled to trial on their RICO claims against these defendants to the extent that duress is an element of the claim and the claim accrued on or after January 1, 1971, if the duress continued at least until December 14, 1973.

Insofar as the County and the County Committee are concerned, since the American Pipe doctrine is applicable to them, all RICO claims of plaintiff class members against these two defendants, whether or not duress is an element, are timely if they

accrued on or after December 2, 1971. In addition, because of the availability of the tolling-by-duress principle, any claim against the County or the County Committee of which duress is an element may be timely even if it accrued between January 1, 1971 and December 2, 1971, if the duress continued at least until December 2, 1971.

### B. *The Interrogatory Answers*

RICO § 1962(c), to the extent applicable to plaintiffs' claims in the present action, makes it "unlawful for any person ... associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Plaintiffs' complaint asserted that the RICO enterprises at issue were "the Nassau County Republican Party and its affiliates."

With respect to the RICO claims, the jury was given four interrogatories (numbered 7–10), each with a number of parts. In response to interrogatories 7 and 8, the jury found that nine named public officials, acting within the scope of their employment, had committed a total of 13 Hobbs Act violations as RICO predicate acts, when they "knowingly and willfully through fear of opportunity for enhanced employment benefits" induced or attempted to induce eleven named public employees to make political contributions.

Interrogatory 9 had four parts, each part having four subparts. The initial question of each part concerned a possible enterprise made up of three of the four defendants. Thus, the jury was asked whether any of the following defendant trios constituted a RICO enterprise:

| | |
|---|---|
| 9(a)(i): Town + County | + Town Committee |
| 9(b)(i): Town + County | + County Committee |
| 9(c)(i): Town + Town Committee | + County Committee |
| 9(d)(i): County + Town Committee | + County Committee |

Of these groupings, the jury answered only 9(c)(i) in the affirmative, thus finding that only the Town, the Town Committee, and the County Committee had formed an enterprise. In the third question of each part of interrogatory 9, the jury was asked if the defendant not included in the trio shown in part (i) was "an entity which knowingly and willfully engaged in a pattern of illegal activity." In response to these questions (numbered "(iii)") the jury found that the County was not such an entity but that each of the other three defendants was. Finally, in connection with each of the trios listed above, the jury was asked whether the defendant not included in the trio was "an entity associated with the enterprise which, through a pattern of illegal activity knowingly and willfully conducted or participated directly or indirectly in the conduct of the enterprise's affairs?" The jury answered all four of these questions (numbered "(iv)") in the negative.

Thus, the jury found no wrongdoing on the part of the County. It found that only one of the possible RICO enterprises about which it was asked had existed, *i.e.*, that composed of the Town, the Town Committee, and the County Committee; and it found that each of the three members of that RICO enterprise was an entity that had knowingly and willfully engaged in a pattern of illegal activity. But it found that none of those three was "an entity associated with the enterprise which, through a pattern of illegal activity knowingly and willfully conducted or participated directly or indirectly in the conduct of the enterprise's affairs."

Finally, in response to interrogatory 10, the jury found that the combination of all four defendants was not a RICO enterprise. The jury was not asked whether any of the three defendants other than the County had participated in the conduct of the affairs of an enterprise that did not include the County.

In its Posttrial Decision, the district court dismissed the RICO claims against all defendants, finding that the jury had "concluded that plaintiffs failed to establish that any one of these defendants was an entity associated with an enterprise which, through a pattern of illegal activity, partici-

pated in the conduct of the enterprise's affairs." Posttrial Decision at 12–13. Stating that "[p]rior to the return of the verdict plaintiffs had consistently maintained that the offender was each defendant, and that, as to each, the enterprise consisted of the combination of the other three defendants," and that "[t]he case was tried on that theory," *id.* at 15, the court concluded that the questions submitted to the jury, to which plaintiffs had agreed, "included all of the enterprise combinations posited by the plaintiffs." *Id.* at 14–15. Thus, the court declined either to permit what it viewed as an amendment of plaintiffs' theory of liability "at this late date," *id.* at 16, or to decide that any defendant had participated in the conduct of a RICO enterprise "as a matter of law," *id.* at 15. We conclude that the court's decision to dismiss the RICO claims on the basis of the jury's interrogatory answers was factually, doctrinally, and procedurally flawed.

■ As a factual matter, we disagree with the court's view that plaintiffs had eschewed pursuit of all RICO claims save those asserting that one defendant had participated in an enterprise comprising precisely the other three. The complaint made the broad allegation that the RICO "enterprises" were "the Nassau County Republican Party and its affiliates." Construed liberally, as is required by Fed.R.Civ.P. 8, this allegation cannot be deemed either limited to enterprises that included the County or limited to enterprise participation only by a person that was not a member of the enterprise. Further, while plaintiffs plainly did consent to the form of interrogatory 9, they also hypothesized other formations that could meet the requirements of § 1962(c) and stated that "for the sake of clarity" they did not object to the questions as posed in interrogatory 9. Thus, to the extent that the proof at trial would have supported a conclusion that the Town, or the Town Committee, or the County Committee—each of which was found to have been part of a RICO enterprise and to have willfully and knowingly engaged in a pattern of illegal activity—had thereby participated in the affairs of the enterprise, the district court should not have concluded that such proof went beyond the scope of the pleadings.

Further, we note that the trial court's instructions to the jury were broader than the interrogatories posed, for the instructions explicitly did not limit the jury to finding a RICO enterprise that consisted only of a combination of three or all of the four defendants. Rather, in both its oral and written charge, the court stated that the jury could find that "any combination" of the defendants, "any ... two or more" of the defendants, could constitute a RICO enterprise. Thus, the written charge stated in part as follows:

> Any combination of two or more of the defendants charged may constitute an enterprise. If you find two or more of the defendants combining for the purpose of soliciting contributions from public employees in violation of their First Amendment rights, then you may find such combination an enterprise.

Finally, we think it significant that interrogatory 10 submitted to the jury asked whether all four of the defendants constituted an enterprise, yet the jury was not asked whether any particular defendant was associated with that enterprise or participated in its activities. The omission of such follow-up questions seems to imply that if all four defendants constituted a RICO enterprise, *a fortiori* each would be found to have been associated with it and participated in its activities.

■ Nor was there any doctrinal impediment to a verdict in plaintiffs' favor based on a finding that one of the defendants had participated in the affairs of an enterprise of which it was a part. While we have held that a solitary entity cannot, as a matter of law, simultaneously constitute both the RICO "person" whose conduct is prohibited and the entire RICO "enterprise" whose affairs are impacted by the RICO person, *see Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), we see no reason why a

single entity could not be both the RICO "person" and one of a number of members of the RICO "enterprise." The definitions of both terms are intentionally broad. *See, e.g.,* H.R.Rep. No. 1549, 91st Cong., 2d Sess. 56 (1970), *reprinted in* 1970 USCCAN 4007, 4032. The term "'person' includes any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3); and "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," *id.* § 1961(4). In consequence, "infiltration of any associative group by any individual or group capable of holding a property interest can be reached." H.R. Rep. No. 1549, at 56, *reprinted in* 1970 USCCAN at 4032. Indeed, the very terms of § 1962(c) appear to envision that the same entity may be both the RICO "person" and a member of the "enterprise," for the section speaks of a "person ... associated with any enterprise." Thus, though we rejected in *Bennett* the notion that an entity may be deemed "associated with" only itself, there is neither a conceptual nor a doctrinal difficulty in positing an entity associated with a group of which it is but a part.

We conclude, therefore, that there was no sound basis for not asking the jury whether, as to an enterprise consisting of Town + Town Committee + County Committee, any of these three defendants was an entity that, through a pattern of unlawful activity, knowingly participated in the affairs of that enterprise. And had the court posed such a question, the trial record seems to suggest that the jury would have answered that question in the affirmative. We base this surmise in part on the fact that the jury consistently exonerated the County and consistently found wrongdoing by the Town and the defendant Committees, and in part on a question sent to the court by the jury during its deliberations. In considering interrogatory 9, and in particular the subparts numbered (iv), the jury sent the court a note asking

Does the "enterprise" referred to in subparagraph (iv) always refer to the enterprises described in (i) and (ii) [ (ii) was a question as to the subpart (i) trio's relationship to interstate commerce] or are they independent questions?

The court in effect answered that "enterprise" in the subparts numbered (iv) was the enterprise referred to in the corresponding subparts (i) and (ii). Because the interrogatories, as thus interpreted, asked about a given defendant's participation only in the affairs of an enterprise comprising the other three defendants, the jury was not allowed to find that the Town or either of the defendant Committees participated in the affairs of an enterprise without also finding that the County was part of an enterprise. Given this constrictive answer to the jury's question, the court's conclusion in the Posttrial Decision that the jury found that the plaintiffs had failed to establish that any defendant was an entity associated with *"an* enterprise" (emphasis added) was plainly overbroad. In fact, had the jury been instructed that the Town or the Committees could be found to have participated in the affairs of an enterprise of which it was a member and the County was not a member, the jury's note and its pattern of interrogatory answers strongly suggest that it would have found that participation.

Since the jury was not allowed to answer that question, however, the court itself should have answered it. Fed.R.Civ P. 49(a) provides, in pertinent part, as follows:

If in [submitting questions to the jury] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

In making the finding required by Rule 49(a) the court is theoretically free to make a finding favoring the defendant, *see Cote v. Estate of Butler,* 518 F.2d 157, 160 (2d

Cir.1975), or favoring the plaintiff, even on an essential element of plaintiff's claim, *see, e.g., Graphic Products Distributors, Inc. v. Itek Corp.*, 717 F.2d 1560, 1569 (11th Cir.1983) (relevant markets in antitrust case); *J.C. Motor Lines, Inc. v. Trailways Bus System, Inc.*, 689 F.2d 599, 602 (5th Cir.1982) (individual defendant's negligence); *Langenderfer v. Midrex Corp.*, 660 F.2d 523, 526 (4th Cir.1981) (intent in equitable estoppel case); *Hyde v. Land-of-Sky Regional Council*, 572 F.2d 988, 991 (4th Cir.1978) (authority of agent or ratification in contract case); *Brenham v. Southern Pacific Co.*, 328 F.Supp. 119, 123 (W.D.La.1971) (proximate cause in negligence action), *aff'd*, 469 F.2d 1095 (5th Cir.), *cert. denied*, 409 U.S. 1061, 93 S.Ct. 560, 34 L.Ed.2d 513 (1972).

In their posttrial motion, plaintiffs here asked the court to enter judgment in their favor on the RICO claims on the basis that the jury's various findings against the three defendants other than the County compelled the inference that each of the three had, in violation of 18 U.S.C. § 1962(c), been associated with an enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In its Posttrial Decision the court declined to make a finding that the Town or either Committee had participated in the affairs of a RICO enterprise "as a matter of law."

■ Rule 49(a), however, required the court only to make a finding on this issue as a matter of fact. The ultimate question after trial is whether or not the plaintiff has proved its claim. If the interrogatories given to the jury do not include a factual question needed for a complete answer to the ultimate question, the consequence under Rule 49(a) is not that the plaintiff's case is to be dismissed but simply that the right to have that fact issue determined by the jury is waived and any gap is to be filled by the court. Proper application of Rule 49(a) is particularly important in a complex case such as this where there are a large number of asserted permutations, any of which could be credited by the jury.

We can appreciate the difficult task confronting the trial judge who wishes to pare down the number of possibilities in order to avoid confronting the jury with a package that is neither manageable nor understandable. But it must be recognized that the availability of special interrogatories is not designed to be a trap for counsel who, failing to anticipate the precise distinctions the jury may make between parties or the judgments it may make as to the credibility of various witnesses, thereby fail to insist on the presentation of interrogatories as to details that later prove crucial.

■ Finally, we note that Rule 49(a) states that when the trial court has failed to make a finding as to an omitted issue, the court "shall be deemed to have made a finding in accord with the judgment on the special verdict." Construing this provision in a manner designed "to secure the just ... determination of [the] action," Fed.R. Civ.P. 1, we think it inappropriate to deem the court to have made a finding on the issue in question here, since the court believed plaintiffs were asking only for a ruling as a matter of law and expressly disavowed making a finding. *See Wood v. Old Security Life Ins. Co.*, 643 F.2d 1209, 1215–16 (5th Cir.1981).

Accordingly, we vacate the judgment dismissing plaintiffs' RICO claims against the Town, the Town Committee, and the County Committee, and remand to the district court for factual findings as to (1) whether plaintiffs proved, by a preponderance of the evidence, *see Sedima, S.P.R.L. v. Imrex Co.*, 105 S.Ct. at 3282–83 (stating obiter that there is no indication that Congress intended to depart from the preponderance standard in civil RICO cases); *Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 481 (5th Cir.1986), *United States v. Local 560 of the International Brotherhood of Teamsters*, 780 F.2d 267, 279–80 n. 12 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986), that the Town, or the Town Committee, or the County Committee participated, through the illegal racketeering activity found by the jury in the affairs of the RICO

enterprise found by the jury, or (2) whether plaintiffs' trial evidence established any other civil RICO claim.

For the reasons stated in part V.A. above, RICO claims relating to the conduct of the Town, the Town Committee, and the County Committee prior to 1973 remain to be tried.

### C. *Alternative Arguments for Affirmance of the RICO Dismissals*

Defendants urge that if we conclude that the district court's dismissal of the RICO claims on the basis of the jury's answers to interrogatories was improper, we should nonetheless affirm that part of the 1985 Judgment on other grounds. They argue, *inter alia,* that the district court erred in denying their pretrial motions to dismiss these claims on the ground that the State Court Judgment constitutes res judicata or that the state court ruling that the action could not properly be maintained as a class action constitutes collateral estoppel. We reject both of these arguments.

█ In determining whether any preclusive effect is to be given to a prior state court judgment, a federal court is required by 28 U.S.C. § 1738 (1982) to give that judgment the same effect that it would have in the courts of the state under state law. *E.g., Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985). It should not give the state court judgment any greater preclusive effect than the courts of the state would give it. *Id.* at 384, 105 S.Ct. at 1334. Application of these principles leads us to reject both the res judicata and the collateral estoppel contentions.

#### 1. *Res Judicata*

█ New York law is clear with respect to two principles that combine to defeat defendants' res judicata argument. First, a claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim. *See Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 72 A.D.2d 385, 391, 424 N.Y.S.2d 918, 922 (2d Dep't 1980); *Mural Arts, Inc. v. Sonsandi,* 82 N.Y.S.2d 153, 154–55 (Sup.Ct. Kings Co. 1948); Restatement (Second) of Judgments § 26(1)(c) (1982); 5 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 5011.18, at 50–140 (1985). Second, New York regards the federal courts as having exclusive jurisdiction over civil RICO claims, and the New York state courts, therefore, as having no jurisdiction to entertain such claims. *See Greenview Trading Co. v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 470–73, 489 N.Y.S.2d 502, 504–06 (1st Dep't 1985); *Belfont Sales Corp. v. Gruen Industries, Inc.,* 112 A.D.2d 96, 100, 491 N.Y.S.2d 652, 655 (1st Dep't 1985).

Accordingly, under New York's preclusion principles, a judgment in a prior New York state court action does not bar the subsequent assertion of civil RICO claims, *see Nordberg v. Lord, Day & Lord,* 107 F.R.D. 692, 701 (S.D.N.Y.1985), and plaintiffs' civil RICO claims here are not barred by res judicata.

#### 2. *Collateral Estoppel*

█ We also find no merit in defendants' contention that the doctrine of collateral estoppel precludes maintenance of the present action as a class action because of the state court's ruling that plaintiffs' 1974 suit in that court could not be maintained as a class action. For application of principles of collateral estoppel, "the issue as to which preclusion is sought [must] be identical with the issue decided in the prior proceeding," *Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463 (1982); but issues are not identical when the standards governing them are significantly different, *see id.* at 18–19, 451 N.Y.S. 2d at 14–15, 436 N.E.2d at 464–65; *Strizak v. Board of Regents of the University of the State of New York,* 29 A.D.2d 1013, 289 N.Y.S.2d 481, 483 (3d Dep't 1968); *Courtney v. Nuding,* 120 Misc.2d 148, 149, 465 N.Y.S.2d 403, 404 (Sup.Ct. Saratoga Co. 1983).

The class action ruling in the state court action was made in the context of the then-prevailing state law standard, namely CPLR § 1005. Section 1005, as interpreted by the state courts, did not permit class actions to be maintained on the basis of separate wrongs to separate persons even if pursuant to a common plan; rather it required that the complaint allege a wrong against the class as a class. *E.g., Cullen v. Margiotta,* 81 Misc.2d at 811, 367 N.Y. S.2d at 641–42. In contrast, Fed.R.Civ.P. 23, which governs the permissibility of class actions in the federal courts, does not require that plaintiffs seek to redress a common wrong perpetrated against the class as a class. *See 3B Moore's Federal Practice* ¶ 23.03, at 23–107 (1985). Rather, certification of a class action under Rule 23 is usually warranted when individual wrongs are alleged to have been pursuant to a common plan. *See, e.g., Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598–99 (2d Cir.1986).

Since the standards governing the propriety of the suit as a class action in the state court and the federal court differed significantly, the state court ruling did not decide the issue presented in this case, and there is no collateral estoppel.

### 3. *Other Arguments*

Defendants also urge the affirmance of the dismissal of the RICO claims on a number of other grounds, including some relating to the court's certification of the suit as a class action and others relating to contentions never ruled on by the district court. We decline to address these arguments at this time. While, as we noted in Part II.C.4. above, an appeal from a final judgment entered under Rule 54(b) allows us to review the court's pertinent pretrial rulings, we consider it appropriate, in light of our remand of the RICO claims for further proceedings, to leave consideration of defendants' other arguments until there have been definitive rulings by the district court and there is an appeal from a new final judgment fully adjudicating the RICO claims.

## CONCLUSION

Defendants' cross-appeals are dismissed for lack of appellate jurisdiction. Plaintiffs' attempt to appeal from orders relating to their claims under 42 U.S.C. § 1983 against the Town, the Town Committee, and the County Committee is similarly dismissed for lack of appellate jurisdiction.

The 1985 Judgment is affirmed insofar as it dismissed the claims against the County with respect to conduct between January 1, 1973 and January 1, 1976, dismissed the claim of Landi against the County with respect to its conduct during that period, and dismissed the claims of Landi against the Town and the Town Committee. Insofar as the 1985 Judgment (1) dismissed the plaintiffs' claims against the County in other respects, (2) dismissed the RICO claims against the other three defendants, and (3) dismissed the promotion claim of Landi against the County with respect to the period prior to 1973 and both of his claims against the County Committee, the judgment is vacated for the reasons set forth above, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.

Except as hereinafter provided, each party shall bear his or its own costs on these appeals and cross-appeals: Plaintiffs shall recover from the defendant Committees and the Town all of plaintiffs' costs in connection with the cross-appeals; Landi shall recover from the County Committee all of his costs in connection with his appeal; and the plaintiff class and Jund shall recover from all defendants one-half of the costs of the class and Jund in connection with their appeals.

MESKILL, Circuit Judge, concurring in part and dissenting in part:

I concur in all parts of the majority's thorough opinion except part III–C–2, wherein the majority opinion applies the tolling principle in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), to toll the statute of limitations on plaintiffs' section

1983 and RICO claims. Tolling under *American Pipe* is appropriate, according to the majority opinion, "[s]ince the substance of the state court claims was the same as that of the claims asserted here and the County was made a defendant to the action." However, for reasons expressed more fully below, I believe that tolling under *American Pipe* is inappropriate in this case both on the law and the facts.

The relief afforded by the tolling doctrine of *American Pipe* applies only to further the purposes of class action procedure and the statute of limitations. 414 U.S. at 551–55, 94 S.Ct. at 765–67. These purposes are furthered by tolling where a group of plaintiffs is denied certification as a class and subsequent individual suits *based on the same cause of action* are untimely as a result of the failed effort to gain class certification. In *American Pipe,* a civil class action suit was filed by the State of Utah in the district court alleging violations of section one of the Sherman Act. *Id.* at 541, 94 S.Ct. at 760. Class action status was denied because the proposed class failed to meet the numerosity requirements of Fed.R.Civ.P. 23(a)(1). Members of the original class action then sought to intervene in the Utah action but were denied permission because the statute of limitations had run on their claims. The Supreme Court held, however, that the running of the statute was tolled where a class "commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 555, 94 S.Ct. at 767. In *American Pipe,* therefore, tolling was permitted where only the procedural vehicle for the assertion of plaintiffs' claims failed, rendering their individual actions untimely. Plaintiffs' individual claims, however, were the very same claims asserted in their original class action.

The majority opinion unnecessarily, and I believe unwisely, broadens *American Pipe.* Unlike the setting in *American Pipe,* the filing of the state action in our case did *not* notify defendants of the "substantive claims being brought against them" in the district court. Although both actions were based on the same set of facts, the claims themselves asserted separate and distinct grounds for recovery. The class action brought in state court was based on a state law theory of recovery seeking compensatory damages. The individual actions brought in federal court sought treble damages based on specific federal statutes.

The majority, in part III–C–1 of its opinion, recognizes "the significant differences between civil RICO and other types of claims cognizable at common law or under state law" for purposes of borrowing a suitable statute of limitations from state law. The majority identifies these differences as follows:

> [M]ost of the racketeering activity that could form the predicate for a civil RICO claim is defined in terms of specific federal statutory violations; additional elements of a civil RICO claim, such as effect on interstate commerce, commission of two predicate acts within a span of ten years, and the required existence of a RICO "enterprise," also find no counterparts at common law. Further, civil RICO remedies are designed not simply to compensate injured persons but to deter would-be wrongdoers by awarding treble damages and attorneys' fees to every successful plaintiff.

The differences that preclude the adoption of a state statute of limitations for RICO claims argue against tolling of the federal statute here. In any given case, there may be elements of a RICO claim that are not in issue and are not pleaded in a state action. Ordinarily, litigants do not plead a state case in an effort to establish the commission of two predicate acts within a ten year time span, or an effect on interstate commerce, or the existence of a RICO enterprise. Certainly, plaintiffs in the present case were not required to plead those elements in their state suit, which was based primarily on sections 61 and 107 of New York's civil service law and Article 5, Section 6 of the New York State Consti-

tution. It is difficult to imagine, therefore, how the state suit could provide defendants with notice of the substantive federal claims that plaintiffs brought later, after their state effort failed.

One purpose of a statute of limitations is to prevent suits after " 'evidence has been lost, memories have faded, and witnesses have disappeared.' " *American Pipe*, 414 U.S. at 554, 94 S.Ct. at 766 (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). This purpose is generally fulfilled where a prior state class action alerts a defendant to preserve evidence that would be helpful in defending against a subsequent individual claim. Plaintiffs' state action was dismissed, however, because the complaint "in no way allege[d] facts sufficient to connect any of the named defendants with the serious charges alleged against them, *nor [did] it give the defendants or the Court notice of the alleged transactions intended to be proved.*" *Cullen v. Margiotta*, 81 Misc.2d 809, 367 N.Y.S.2d 638, 644 (Sup.Ct. Nassau Co. 1975) (emphasis added). Plaintiffs' state action simply did not alert defendants to the possibility that a later federal civil rights claim or a RICO claim would be brought against them. After the state action was dismissed on the merits, defendants had no reason to preserve evidence.

The dismissal of plaintiffs' state complaint on the merits, therefore, serves to distinguish this case from *American Pipe*. In *American Pipe*, only the procedural vehicle for the assertion of otherwise valid claims failed. The Supreme Court stated:

> We hold that in this posture, at least where class action status has been denied *solely* because of failure to demonstrate that "the class is so numerous that joinder of all members is impracticable," the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.

414 U.S. at 552–53, 94 S.Ct. at 765–66 (emphasis added). Here, not only was class action status denied, but plaintiffs' state claims were dismissed for failure to state a cause of action under state law. Based on a plain reading of *American Pipe*, it should be apparent that the Supreme Court would not permit tolling here.

New York cases cited in support of *American Pipe* tolling likewise do not support the result reached by the majority. None of the cited cases holds that a state class action asserting an invalid state law claim tolls the statute of limitations on an individual action brought on a federal statute in federal court. In *Yollin v. Holland America Cruises, Inc.*, 97 A.D.2d 720, 468 N.Y.S.2d 873, 875 (1st Dep't 1983), the Appellate Division decided only that the commencement of a class action tolls a contractual period of limitations for all persons who may wish to join the class. *Yollin* did not even deal with the separate problem of tolling for subsequent individual suits.

In *Clifton Knolls Sewerage Disposal Co. v. Aulenbach*, 88 A.D.2d 1024, 1025, 451 N.Y.S.2d 907, 908 (3d Dep't 1982), defendants had previously brought a class action seeking a determination that plaintiff was not entitled to charge them for sewer services. The court ruled in favor of plaintiff. Plaintiff then brought an action to recover for the services based on the earlier judgment. The court ruled that the earlier class action tolled the statute of limitations with respect to plaintiff's later suit. In *Clifton*, the earlier judgment on liability provided adequate notice that plaintiff might bring an action to recover its sewer charges. In the present case, no similar prior judgment has been entered establishing liability on the federal claims and, therefore, *Clifton* is inapposite.

Finally, in *Sutton Carpet Cleaners v. Firemen's Ins. Co.*, 68 N.Y.S.2d 218, 224 (Sup.Ct. Bronx Co. 1947), *aff'd*, 273 A.D. 944, 78 N.Y.S.2d 565 (1st Dep't 1948), *aff'd*, 299 N.Y. 646, 87 N.E.2d 53 (1949), only the procedural vehicle for bringing representative claims failed. No issue was presented concerning tolling of limitations periods when the original class action suit is dismissed for failure to state a claim. *Sutton* is like *American Pipe* and unlike our case

and, therefore, is inappropriate as authority for tolling in this case.

For the foregoing reasons, it is evident that the majority opinion broadens *American Pipe* tolling to a questionable and, I believe, unwise extent.

> The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 2398, 76 L.Ed.2d 628 (1983) (Powell, J., concurring). As a practical matter, my objections would make little difference in much of the result reached by the majority because the principle of tolling by duress applies to toll the limitations period to the same or greater extent as would *American Pipe*. However, as to the claims mentioned in part III–C–2–b of the majority opinion, *i.e.*, claims against the county that are not subject to tolling by duress, and as to claims that do not involve capitulation to coercion, neither tolling by duress nor *American Pipe* tolling would bar the statute of limitations. Accordingly, as to these few claims, the district court should be affirmed.